[No. 993. Decided August 7, 1893.]

JOHN A. PIERCE, *Respondent*, v. THE CITY CLERK OF
THE CITY OF SPOKANE, *Appellant*.

MUNICIPAL CORPORATIONS — AMENDMENT OF CHARTER — SUBMISSION TO CITY COUNCIL — DIRECTORY PROVISIONS — NUMBERING AMENDMENTS.

Sec. 225 of the freeholders' charter of Spokane (adopted March 24, 1891) providing that amendments thereto shall be proposed by the city council and entered upon the record of proceedings, "and at the second regular meeting of the council thereafter shall be again submitted to a vote of the council," is merely directory as to time of submission, and such proposed amendment may be submitted to the council after the time of its second regular meeting without affecting the validity of the proposed amendment.

Under §518, Gen. Stat., providing for the submission to voters of amendments to city charters by number, the action of the city clerk in affixing numbers to the amendments, both in the election notice and on the ballots, is a sufficient compliance with the law, although the city council may have failed to number the proposed amendments.

*Appeal from Superior Court, Spokane County.*

*F. T. Post*, for appellant.

*James D. Kelly*, and *Turner, Graves & McKinstry*, for respondent.

The opinion of the court was delivered by

ANDERS, J. — At an election held March 24, 1891, a freeholders' charter was adopted for the city of Spokane, which went into effect April 4, 1891, and which has ever since been the charter of said city. By §9 of art. 2 of said charter it is provided that —

"The officers of said city, to be elected by said city at large, shall be the mayor, treasurer, comptroller, city assessor and city attorney. Three councilmen shall be elected in each ward by the qualified electors therein. The corporation counsel, the city commissioners, and such other

officers to fill any office hereinafter created, as may be found necessary to carry out the provisions of this charter, shall be appointed by the mayor and confirmed by the city council. The city clerk shall be elected by the city council. The appointment of all other officers not herein specified shall be made by the mayor, subject to confirmation by the city council. All elective officers shall hold office until their successors are elected and qualified."

Section 78 of article 5 of said charter is as follows:

"The law department of the city of Spokane Falls shall consist of a corporation counsel and city attorney."

Section 225 of article 14 of said charter provides as follows:

"Any amendment or amendments to this charter may be proposed by the city council, upon a vote of two-thirds of all the members thereof concurring therein. When such an amendment or amendments shall be so proposed, the same shall be entered upon the record of proceedings, and at the second regular meeting of the council thereafter shall be again submitted to a vote of the council, and if upon such resubmission two-thirds of all the members of the city council concur therein, such amendment or amendments shall be submitted to the qualified electors for their adoption at the next general municipal election, and if a majority of all the votes cast upon the subject shall be in favor of adoption, the same shall thereby become a part of the city charter. Every proposed amendment shall be published in the official newspaper thirty days next preceding the day of election at which the same is submitted to the electors."

On March 16, 1893, at a regular meeting of the city council, the following amendments to said freeholders' charter, among others, were offered for the first time and read, and, on roll call, adopted unanimously, viz., a proposition to amend § 9 of art. 2 of the freeholders' charter be amended so as to read as follows:

"SEC. 9. The officers of said city to be elected by said city at large shall be the mayor, treasurer and comptroller.

Three councilmen shall be elected in each ward by the qualified electors therein. The corporation counsel, the city commissioners, and such other officers to fill any office hereafter created as may be found necessary to carry out the provisions of this charter, shall be appointed by the mayor and confirmed by the city council. The city clerk shall be elected by the city council. The appointment of all other officers not herein specified shall be made by the mayor, subject to confirmation by the city council. All elective officers shall hold office until their successors are elected and qualified."

A proposition to amend § 78 of art. 5 of the freeholders' charter—

*Resolved,* That § 78 of art. 5 of the freeholders' charter be amended so as to read as follows: Sec. 78. The law department of the city of Spokane shall consist of a corporation counsel."

Prior to the proposal of these amendments, a resolution was adopted by the city council providing for regular daily meetings, except Sundays, and accordingly such meetings were held up to and including March 25, 1893.

On March 21st, all of the proposed amendments were referred to the corporation counsel for his opinion as to their legality, and on March 25th such opinion was given, and the amendments in question were then resubmitted to the city council and adopted by the requisite number of votes.

The law contemplates that such amendments as these in question may be voted on by numbers, but none of the proposed amendments were designated by numbers when submitted to and adopted by the city council. They were, however, published by numbers in the election notice, for the requisite period of time, in the daily newspapers of the city, and were designated on the printed ballots used at the general municipal election as "Proposed amendments No. one, No. two," and so on, consecutively, such numbers corresponding with those published in the notice of

election.   These numbers were attached by the city clerk,
without having been authorized so to do by any resolution
or express direction of the city council.

At the general municipal election held on May 2, 1893,
these proposed amendments to the charter were submitted
as above indicated to the electors of the city for their
adoption or rejection.   Thereafter, and on May 9, 1893,
the city council met as a board of canvassers, and, finding
a majority of votes cast on the question of the amendments
to be in favor of their adoption, declared each and all of
them adopted, and then and there, by resolution, declared
the office of city attorney abolished by the amendments
under consideration.   At said election the respondent and
one Marshall were the only candidates for the office of city
attorney, and the respondent received a majority of all the
votes cast therefor.   Conceiving that the amendments by
,which the said office was abolished were not legally adopted,
the respondent applied to the city clerk for a certificate of
election.   The clerk refused to comply with his request,
whereupon he caused a writ of *mandamus* to be issued out
of the superior court to compel him to do so.   At the
hearing upon the return to the alternative writ the court
peremptorily ordered the clerk to issue the certificate de-
manded, to review which order this appeal is prosecuted.

It is manifest that the ruling of the learned court be-
low was erroneous, unless the city council failed, in some
essential particular, to comply with the law and the city
charter, in causing the amendments now under considera-
tion to be submitted to the vote of the people.   The valid-
ity of the amendments is challenged by the learned counsel
for the respondent on two grounds, the first and principal
one of which is that they were not resubmitted to, and con-
curred in by, the city council at its *second regular meeting*
after their first submission, in accordance with the provis-
ions of § 225 of the charter hereinbefore set forth.   And

the argument, briefly stated, is, that the charter was the source of all power which could be exercised by the council upon the subject of amendments, and the mode in which such power should be exercised having been therein prescribed, a strict compliance therewith was essential to a valid exercise of the power thus conferred. We readily yield assent to the doctrine thus formulated, for we believe it to be abundantly supported by authority. But, was there a departure by the council, in this instance, from the mode or method pointed out by the charter? It is insisted that there was, because the proposed amendments were not resubmitted to the council for their adoption at their *second regular meeting*, as provided for by the terms of the charter. We think, however, that such a conclusion does not necessarily follow from that fact. The method of accomplishing a certain result is one thing, and the time of doing it is quite another. The mode of doing a particular thing may be essential, while the time of doing it may or may not be essential, according to the intention of the body or power directing it to be done.

But it is contended on behalf of the respondent that the language used by the framers of the charter is so plain and unambiguous that this court cannot even say that it is directory, but must give it effect according to its strict literal meaning. We prefer, however, to follow the rule generally adopted by the courts, "that a thing may be within the letter of a statute and yet not within the statute, because not within its spirit, nor within the intention of its makers." *Church of the Holy Trinity v. United States*, 143 U. S. 457 (12 Sup. Ct. Rep. 511).

In the case just cited, many instances are mentioned where the courts have held that general and unequivocal language found in statutes was not controlling, when to give it effect according to its plain, ordinary meaning would lead to unreasonable results or absurd consequences,

or fail to effectuate the object which the legislature had in view.

Now, what was the object which the freeholders had in view when they provided that proposed amendments to their charter should be resubmitted to the council at the second regular meeting subsequent to their first proposal and submission? Is it reasonable to suppose that they thereby intended to designate a time at which such action should be taken, under all circumstances, and in any event? Was it contemplated, for instance, that if, from any cause, two-thirds of the members of the council should not be in attendance at such second meeting, there could be no postponement of the matter to a subsequent meeting? We think both of these questions must be answered in the negative. The charter makers knew that some time would be required by the council for a proper consideration of amendments before final adoption, and therefore concluded that at least one regular meeting of the council should intervene between the time such amendments should be proposed and the time when they should be again voted upon. That no definite number of days or weeks was contemplated, is evident from the fact that the charter provides that the city council shall meet at least semi-monthly and as often as they may determine by resolution or ordinance.

When the "second regular meeting thereafter" was designated as the time when proposed amendments should be resubmitted to the council for final adoption, no one could then tell, under the above provision of the charter, whether such second meeting, in any particular instance, would be held two days or one month after the first. It therefore seems clear that at the time at which proposed amendments should be resubmitted to the council was not considered to be of the essence or substance of the thing to be done, and that the provision of the charter with respect thereto is directory merely, and was substantially com-

plied with by the city council. *People v. Cook*, 14 Barb. 290 (8 N. Y. 67); *Hurford v. Omaha*, 4 Neb. 336.

The rule on this subject, in cases like this, is stated by Mr. Endlich in his valuable work on the Interpretation of Statutes, § 436, as follows:

"It has often been held; for instance, where an act ordered a thing to be done by a public body or public officers, and pointed out the specific time when it was to be done, that the act was directory only, and might be complied with after the prescribed time. Such is, indeed, the general rule, unless the time specified is of the essence of the thing, or the statute shows that it was intended as a limitation of power, authority, or right."

We see nothing in the provision in question, when viewed in connection with the object sought to be accomplished, which shows that the framers of the charter intended that the council should have no power to act at all after the time prescribed. If such had been the intention, we think it would have been so expressed.

The second point made is, that the proposed amendments were all numbered by the city clerk, and not by the council, or by any record authorization by the council, and were therefore not legally submitted to the electors of the city. Sec. 518, Gen. Stat., provides for the submission of amendments to the voters by numbers. This method was doubtless adopted as a matter of convenience, and to avoid the necessity of spreading the whole proposition to be voted for upon the ballot.

While it does not appear that numbers were attached to these amendments when they were first proposed in the council, it does appear that they were designated by numbers both in the election notice as published and on the ballots. It would, therefore, seem that the same opportunity was afforded for the voter to vote intelligently upon the propositions submitted that would have been afforded if the numbers had been attached when the amendments

were considered by the council. It is altogether probable that no person who voted upon the subject of these amendments ever consulted, or desired to consult, any record, document or paper, other than the notice of election wherein each proposition was set forth in full and by numbers corresponding to those appearing upon the ballots used at the election. Nothing appears showing that the election was in any way unfair, or that the result would have been different had the numbers been attached to the amendments by the council in the manner contended for by the respondent.

We think there was a substantial compliance with the terms of the charter, and the judgment of the court below is, therefore, reversed.

HOYT, SCOTT and STILES, JJ., concur.

DUNBAR, C. J., dissents.