[No. 25262. *En Banc.* March 7, 1935.]

THE STATE OF WASHINGTON, *on the Relation of The Washington Water Power Company, Appellant,* v. E. K. MURRAY, *as State Director of Public Works, et al., Respondents.*[1]

*Post, Russell, Davis & Paine,* for appellant.

*The Attorney General, Ferd J. Schaaf, Assistant,* and *Frederick J. Lordan,* for respondents.

[1]Reported in 42 P. (2d) 429.

TOLMAN, J.—Appellant, as relator, by this proceeding sought a writ of prohibition directed to the department of public works, prohibiting the department from enforcing against it the provisions of chapter 165, Laws of 1933, p. 609, § 11 (Rem. 1934 Sup., § 10458-5 [P. C. § 5527-11]), relating to the payment of dividends upon the common stock of public service companies. Upon the filing of the application, an alternative writ and show cause order issued. On the return day, respondents appeared by a motion to quash the affidavit and application for the writ, upon the ground that the facts stated were insufficient, and that the relator had a plain, speedy and adequate remedy at law. The trial court granted the motion, and entered judgment quashing the alternative writ and dismissing the action with prejudice. The relator has appealed.

The motion to quash was, in effect, a demurrer, and admitted the facts well pleaded. Hence, we must first see what facts are presented as a basis for the relief sought.

The affidavit is very long and exhaustive, and in it conclusions and arguments are freely intermingled with allegations of fact, but surplusage does not vitiate. The affidavit is made by relator's president, shown to be in active charge of its business and operations, and competent to speak in its behalf.

It sets forth, among other things, that relator is a corporation organized and doing business under the laws of the state of Washington; that it has and does own, operate and manage public electric plants and public water systems in the state of Washington, and is an electrical company, a water company and a public service company, as defined by chapter 117 of the Laws of 1911, p. 538 (Rem. Rev. Stat., § 10339 [P. C. § 5528] et seq.), and acts amendatory and supplemental thereto; that the relator has complied with, and is now

complying with, all of the provisions of our state laws, and has paid all fees and dues required thereby; that relator has also complied with all of the laws of the state of Idaho relating to foreign corporations, and has owned and does own and operate electrical plants and water systems in the state of Idaho, and is an electrical corporation and a water corporation within the purview of the Idaho statutes, with all of which it has complied; that, at all times mentioned, the relator has been engaged in furnishing electric service and water service to the public in the state of Washington and also in the state of Idaho, and is now so engaged in twelve counties in the state of Washington and nine counties in the state of Idaho; that all of those electric power plants in each of the states have been and now are connected with each other by high voltage electric transmission lines crossing the line between the two states mentioned, and that electricity at all times mentioned has been, and is now being, transmitted from the state of Washingon to the state of Idaho, and vice versa; so that, at all times, the relator has been engaged in interstate commerce as well as intrastate commerce, and that, of its total gross revenues from the sale of electricity, approximately one-fifth is derived from business in the state of Idaho and four-fifths from business in the state of Washington.

The affidavit then sets out the enactment of chapter 117 of the Laws of 1911, p. 538, analyzes somewhat that act, and sets out, quotes from, and analyzes, chapter 165 of the Laws of 1933, p. 602 and then proceeds:

"Affiant further states that at the time of the passage of Chapter 165 of the laws of 1933, which law was amendatory and supplemental to Chapter 117 of the laws of 1911, and now, the number of public service companies, as defined by the said public service law of the State of Washington, filing reports with the Department of Public Works, is about 600, of which 43

are electrical companies; that of the electrical companies 32 are doing business in the State of Washington only, and 11 are doing business in one or more other states as well as the State of Washington; that of all the other public service companies which report to the Department of the State of Washington, 490 do business in the State of Washington only and 99 do business in one or more other states as well as in the State of Washington; that of those doing business in other states as well as in the State of Washington there are 10 steam railroads, four telephone companies, four water companies, four telegraph companies and 28 auto transportation companies; that of the public service companies reporting to the Department of Public Works and doing business in states other than the State of Washington, some of them do business in countries other than the United States of America, and in some instances there is no physical connection whatsoever between the plants operated by such companies as between said states and countries. . . .

"Affiant further states that of the public service companies, as defined by said Laws of 1911, and by laws amendatory thereof, 250 thereof are non-incorporated and doing business in the State of Washington only; that of the public service companies doing business in other states as well as in the State of Washington, 25 thereof are not incorporated. The said non-incorporated companies are copartnerships, individuals or other unincorporated organizations, and among them are twelve electric public service companies, 50 telephone public service companies, 67 water companies and 76 auto transportation companies; . . ."

The affidavit proceeds by setting forth that, at a meeting of the board of trustees of the relator corporation on January 31, 1934, resolutions were passed declaring a dividend upon the common stock of the company, based upon a showing that the amount to be distributed had been fully earned and can reasonably be paid without impairing the ability of the company to perform its duty to render reasonable and adequate

service at reasonable rates; and further providing that the dividends so declared be not actually paid until relator shall obtain a final adjudication by the courts of the state of Washington to the effect that § 11 of chapter 165 of the Laws of 1933, p. 609, is either invalid so far as relator is concerned, or is inapplicable to the relator; and failing to obtain such adjudication, the dividend shall not be paid until approval be obtained from the department of public works. The resolution authorized the bringing of appropriate action to obtain the adjudication mentioned.

The gist of appellant's contentions is set forth in the affidavit as follows:

"(a) That it is the intent and spirit of said Chapter 165 of the 1933 Session Laws of this state, and therefore the law of this state, that the power, duty and obligation of the Department to consider and determine the propriety or impropriety, under the statute, of a public service company paying any common stock dividend relates only to incorporated public service companies engaged solely in business in this state and that it is not the intent and spirit of said statute to confer power upon or impose upon the Department the duty and obligation of investigating the business of any incorporated public service company doing business in one or more other states or in foreign countries, or undertaking to pass upon the propriety or impropriety of such corporations paying any common stock dividends; and hence that the Department of Public Works has no jurisdiction to consider, determine, or make any order in relation to the propriety or impropriety of the relator paying any common stock dividend.

"(b) That if it shall be held by the court that it was the intent and it is the spirit of said Chapter 165 that the Department of Public Works of this state shall pass upon the propriety or impropriety of the payment of common stock dividends as to all incorporated public service companies including those which may be doing some business in this state and doing business

in one or more other states and/or foreign countries, and make orders in relation thereto, and impose penalties against such corporations and their executive officers if such dividends shall be paid without obtaining orders of approval from the Department, then it is the contention of the relator that such part of said Section 11 of Chapter 165 as so construed is invalid and contrary to law because:

"1. It would cast a burden upon and be an interference with interstate commerce.

"2. It would be an interference with the managerial powers of the Board of Directors and managing officers of such corporation and an attempted usurpation thereof and not within the regulatory powers of the legislature of this state or any legislative or administrative commission created under an act passed by such legislature.

"3. That such Section 11 applies and is intended to apply only to incorporated public service companies and not to unincorporated public service companies or to partnerships, persons, and others doing business as public service companies, and therefore is invalid because it is discriminatory and denies the relator the equal protection of law."

These contentions are repeated, amplified and extended in the printed brief filed in this court, but what has been quoted sufficiently presents the issues for present purposes.

In order to weigh and pass upon these facts and these contentions, the terms of the statutes applicable must be kept clearly in mind.

Chapter 117, Laws of 1911, p. 538, is entitled:

"An Act relating to public service properties and utilities, providing for the regulation of the same, fixing penalties for the violation thereof, making an appropriation and repealing certain acts."

Nowhere in the act have we found any language indicating the intent to regulate any interstate business. The words "within this state" are used in most in-

stances; and when those words are not actually used, it is quite apparent that they are to be inferred to the extent of subjecting to regulation only the intrastate business of those who may also be engaged in interstate business. Indeed, it could not be otherwise, as the state may not presume to regulate interstate commerce. Hence, it clearly appears that the purpose is to regulate all intrastate business even though it be the activities of those engaged also in interstate business.

Chapter 165, Laws of 1933, p. 602, is entitled:

"AN ACT relating to public service companies, providing for additional supervision and regulation thereof, amending sections 34, 79, 82 and 92 of chapter 117 of the Session Laws of 1911, and amending section 27 of chapter 7 of the Session Laws of 1921, repealing section 87 of chapter 117 of the Session Laws of 1911 and section 2 of chapter 119 of the Session Laws of 1931, adding to chapter 117 of the Session Laws of 1911 new sections to be numbered 87, 113, 114, 115, 116, 117, 118, 119, 120, and declaring that this act shall take effect immediately."

As in the earlier legislation, the words "within this state" or "in this state" are written in or are clearly intended throughout the entire act, and only in section 11 is there any language used which differs from the usual and ordinary. That section, so far as is here in issue, reads:

"No public service company engaged in intrastate business in this state shall pay any dividend upon its common stock until:
"(1) The public service company's earnings and earned surplus are sufficient to declare and pay the same after provisions are made for reasonable and proper reserves.
"(2) The dividend then proposed to be paid upon such common stock can reasonably be paid without impairing the ability of the public service company to

perform its duty to render reasonable and adequate service at reasonable rates.

"Before any common stock dividend is paid, the public service company shall make application to the department for approval thereof, and shall furnish to the department such information and data relating thereto as the department shall require.

"If the department finds after notice and an opportunity to be heard that the payment of such dividend will not be in violation of the provisions of this section it shall approve the declaration and payment thereof, otherwise it shall disapprove the same. No such dividend so disapproved shall be paid unless and until the findings and order of the department with respect thereto, have been vacated and set aside in proper proceeding for review thereof." Rem. 1934 Sup., § 10458-5 [P. C. § 5527-11].

The unusual words are found in the first clause of the section reading "No public service company *engaged in intrastate business in this state* shall pay any dividend," etc. The words we have italicized indicate what is here urged to be something different and out of line with every other provision of this and all former legislation upon the subject. Clearly, if § 11 had been intended to apply just as all other sections must be applied, there would be no occasion for the insertion of the words "engaged in intrastate business." The words, "no public service company shall pay any dividend," etc., or, "no public service company engaged in business in this state shall pay any dividend," etc., would have been ample and sufficient, and in full harmony with all that precedes and follows, and would have clearly evidenced an intent that the provision should apply to all who do business in this state.

Did the legislature by these extra and unusual words intend to say, "no public service company engaged only in intrastate business shall pay," etc.? In other words, what was the intent and purpose expressed

or intended to be expressed by the insertion of the unusual words "engaged in intrastate business?"

These unusual words must have been used either as descriptive or to qualify. They can hardly have been used descriptively, because chapter 117, Laws of 1911, p. 541, § 8, of which this act is amendatory and to which it is supplemental, defines and describes public service companies with great particularity; and under that act, there can be no such thing as a public service company unless it is doing business in this state. Hence, unless we are to charge the legislature with doing an idle and useless thing, we must discard the theory that the words in question were used descriptively.

And so, to give the words "engaged in intrastate business in this state" any meaning whatever, they must be treated as qualifying what immediately follows; and thus treated, the word "only" was clearly intended and the clause should be read as limiting the application of § 11 to those companies doing only an intrastate business.

The practical difficulties of administering the act if it be applied to those doing an interstate as well as an intrastate business, to say nothing of the serious legal questions to be encountered, lends great force to the situation; and that feature alone is all but convincing as to the legislative intent that this section should be applied only to those engaged exclusively in intrastate business.

The principles of law applicable to statutory construction are well settled.

In *Murray v. Department of Labor and Industries*, 151 Wash. 95, 275 Pac. 66, we quoted with approval from 25 R. C. L. 246, as follows:

"It is a cardinal rule of statutory construction that significance and effect shall, if possible, be accorded every section, clause, word or part of the act."

In other cases, we have recognized the rules applicable. *Pierce v. City Clerk of Spokane,* 7 Wash. 132, 34 Pac. 428; *Howlett v. Cheetham,* 17 Wash. 626, 50 Pac. 522, *Scouten v. Whatcom,* 33 Wash. 273, 74 Pac. 389; *Detamore v. Hindley,* 83 Wash. 322, 145 Pac. 462; *Maximillian v. Clausen,* 117 Wash. 74, 200 Pac. 583, 203 Pac. 379.

We recognize the well settled rules of law to the effect that corporations are creatures of the legislature, and that they are subject to such legislation as the legislature may, under the well established rules as to equality, uniformity and the like, see fit to apply.

We are, however, convinced that there was no intent by this act to regulate the payment of dividends by those engaged in interstate as well as in intrastate business, and that, as it now appears the appellant was actually so engaged, we find no occasion to discuss the other questions raised. It follows from what has been said that the judgment appealed from must be reversed.

Reversed, and remanded for further proceedings not inconsistent with the views herein expressed.

STEINERT, MAIN, MITCHELL, and HOLCOMB, JJ., concur.

MILLARD, C. J. (dissenting)—I cannot agree that the legislature has exceeded its powers; that being so, I dissent.

GERAGHTY, J. (dissenting)—I am unable to concur in the majority opinion.

The ordinary mind would find no difficulty in apprehending the meaning of the phrase, "no public service company engaged in intrastate business in this state," used in § 11 of the act. The majority, however, discover that the legislature did not intend what these plain words import, and materially change and limit

the scope of the law by interpolating the word "only."
Now, I suppose that, if the legislature intended to so
limit the operation of the act, it would have said so
by using the word "only," or some other appropriate
word.

The purpose of the law is obvious enough. It was
intended to safeguard the public against the dissipa-
tion of a utility company's resources through the pay-
ment to the stockholders of unearned and unauthorized
dividends. The law is sustainable as to domestic cor-
porations, either as an amendment to the enabling act
under which they are organized or as an exercise of
the police power.

I can see some practical difficulties in the administra-
tion of the act in so far as it relates to foreign corpora-
tions doing business within the state. The limiting
construction placed upon the act by the majority does
not obviate these difficulties, because a foreign corpora-
tion may be engaged solely in intrastate business.
However, we are not concerned here with the difficulty
of administering the act as to foreign corporations,
because the relator is a domestic corporation, wholly
a creature of law and subject to the limitations pre-
scribed in the statutes and constitution of the state.

Section 1, article XII, of the constitution, authorizes
the formation of corporations under general laws, and
provides that all laws relating to corporations may be
altered, amended or repealed by the legislature at any
time.

Rem. Rev. Stat., § 3823 [P. C. § 4524], in effect long
before the relator was organized, is as follows:

"It shall not be lawful for the trustees to make any
dividend except from the net profits arising from the
business of the corporation, nor divide, withdraw, or
in any way pay to the stockholders, or any of them,
any part of the capital stock of the company, nor to
reduce the capital stock of the company unless in the

manner prescribed in this chapter, or the articles of incorporation or by-laws; and in case of any violation of the provisions of this section, the trustees, under whose administration the same may have happened, except those who may have caused their dissent therefrom to be entered at large on the minutes of the board of trustees at the time, or were not present when the same did happen, shall, in their individual or private capacities, be jointly or severally liable to the corporation and the creditors thereof in the event of its dissolution, to the full amount so divided, or reduced, or paid out . . . ".

It will thus be seen that the unauthorized payment of dividends forbidden by the act now under consideration has already been made unlawful. The present act is preventive in character, while § 3823 provides only for the liability of the trustees after the unlawful diversion has taken place.

We are not concerned, of course, with the public policy involved in this law. That question was for the legislature. It is sufficient for us that the legislature was acting within its power.

It is not apparent how the relator will be in any way embarrassed by the law. It cannot be assumed that the department of public works will act arbitrarily or capriciously in denying permission to pay dividends actually earned. If the department should act arbitrarily or capriciously, relator will have its remedy in court.

BLAKE and BEALS, JJ., concur with GERAGHTY, J.