[No. 10783. Department Two.  March 15, 1913.]

THE STATE OF WASHINGTON, *on the Relation of School District No. 25 in Walla Walla County, and No. 100 in Columbia County, Appellant,* v. BOARD OF COUNTY COMMISSIONERS OF COLUMBIA COUNTY, *Respondent.*[1]

SCHOOLS AND SCHOOL DISTRICTS — JOINT DISTRICTS — ESTABLISHMENT—PROCEEDINGS—APPEAL—STATUTES—CONSTRUCTION. Under Rem. & Bal. Code, § 4457, providing that the decision of two county school superintendents creating a joint school district from the territory of two counties shall be final, there is no appeal therefrom to the board of county commissioners of one of the counties, as provided for by other sections of the school code in the case of specified decisions of a county school superintendent covering territory lying wholly within the same county.

Appeal from a judgment of the superior court for Columbia county, Miller, J., entered August 6, 1912, upon findings in favor of the defendants, dismissing a writ of certiorari to

[1]Reported in 130 Pac. 749.

review a decision of the board of county commissioners reversing an order of county superintendents of schools creating a joint school district.   Reversed.

*T. P. Gose* and *Milton O. Pickett*, for appellants.

*R. M. Sturdevant* and *Hardy E. Hamm*, for respondent.

MORRIS, J.—In January, 1912, the county school superintendents of Columbia and Walla Walla counties, upon a. petition duly presented to them and after due hearing, joined school district No. 4, of Columbia county, and school district No. 3, of Walla Walla county, into a joint district, known as school district No. 100, of Columbia county and school district No. 25, of Walla Walla county.   Thereafter a resident of the joint district within Columbia county appealed from the order of the county superintendents joining the two old districts into the new joint district, to the board of county commissioners of Columbia county; which board accepted jurisdiction and reversed the order of the county superintendents.   The joint district then, through an interested party, sued out a writ of certiorari, attacking the jurisdiction of the county commissioners of Columbia county to hear and determine the appeal.   Upon a hearing the jurisdiction of the commissioners was upheld, and the writ dismissed.   The relators appeal.

The appeal presents a simple question of law, Did the county commissioners of Columbia county have any jurisdiction to hear and determine the appeal?   We answer, No. All questions relating to schools in this state are determined by the act of 1909, known as the School Code, and are found in Rem. & Bal. Code, § 4302 *et seq.*   Section 4427 provides for the formation of new districts.   Section 4433 provides for the alteration of boundaries of districts.   Section 4436 provides for the alteration of boundaries of school districts by the extension of city limits.   Section 4440 provides for the formation of consolidated districts.   Each of these sec-

tions covers territory lying wholly within the same county, and in each case the right of appeal is expressly given from the decision of the county school superintendent to the board of county commissioners of the county in which the territory affected is situate.  Provision is then made for joint school districts lying in two or more counties, under § 4448, providing:

"When the public good requires it, a school district may be formed of contiguous territory lying in two or more counties, and such districts shall be known as joint school districts.  They shall be designated by a separate number for each county in which any portion of their territory may lie."

Subsequent sections contain provisions for petitions, notice, and hearing appointment of boards of directors, filling of vacancies in such boards, transfers of territory, apportionment of funds, and adjustment of property.  Section 4457 then provides, after referring to the hearing by the county superintendents of the counties interested and the adjustment of the matters contained in the previous sections:

"They shall make a full record of all such findings and terms of adjustment and the decision of said county superintendents shall be final."

It seems to us there is little more to be said.  There can be no question but that the whole matter was within the power of the legislature to determine, and it had the right to say when and under what circumstances the action of county superintendents should or should not be final.  We can see good reason for granting the right of appeal to the county commissioners when the territory affected was wholly within one county, and denying it when that territory was embraced within two or more counties.  In the first case, a finality of decision as to all the territory affected could be determined by the appeal.  In the second case, it could not; for if an appeal would lie on behalf of the territory in one county, it would lie on behalf of the territory in the other counties, each appeal being taken to the respective boards of county

commissioners; each board reaching its own conclusion, with the possibility of as many conflicting decisions as there were boards of county commissioners. There could be no finality in such a procedure. In fact it would border on the absurd. Evidently the legislature foresaw this when it provided that, in cases affecting property in two or more counties, the decision of the county superintendents should be final. The whole matter was to be determined by the requirement of "the public good," as provided in § 4448, and the legislature determined that the "public good" could best be served by giving the right of final decision to the county superintendents rather than risking a ridiculous situation and giving each board of county commissioners the opportunity of determining how the joinder should be formed and the other attendant questions determined. For it is manifest that, in cases of territory within different counties, no board of county commissioners could have jurisdiction over territory in other counties. So that, if any appeal was to be taken as in the other instances in which the right is granted, the persons interested in each fraction of the whole territory would appeal to its own board; and with the possibility of conflicting determinations, the joinder would be as effectually dead as if the right was withheld in the first instance. The discretion vested in the respective county superintendents must, of course, be exercised in such a manner as to be free from fraud, abuse, and other kindred evils. The courts are always open for the determination of such matters. The county superintendents must act according to law and within the law. When they so act, their determination of the merits of the questions submitted to them is final. When they do not so act, their findings may be reviewed by any court of competent jurisdiction. *State ex rel. McCallum v. Superior Court, ante* p. 144, 129 Pac. 900.

Section 4457, before referred to, is as follows:

"At the hearing for the formation of a joint school district, the county superintendents shall, in case the petition

is granted, hear testimony offered by any person or school district interested therein, for the purpose of finding and determining the amount and value of all school property of whatever nature involved in the proposed action, the nature and amount and value of all bonded, warrant and other indebtedness of the original school district or districts out of whose territory such joint district is formed, including all legal uncompleted obligations then existing, and in so doing shall consider the amount of such outstanding indebtedness incurred for current expenses, the amount incurred for permanent improvements, and the location of such improvements, and shall make an equitable adjustment of all property, debts and liabilities among the districts involved. They shall make a full record of all such findings and terms of adjustment and the decision of said county superintendents shall be final."

Under this reading, respondent contends that the final "findings and terms of adjustment," spoken of in the last sentence, refer only to "an equitable adjustment of all property, debts and liabilities among the districts involved," and that as to these matters only was it intended to make the findings of the county superintendents final. This is too nice a distinction. The section, it will be noted, refers to "the hearing for the formation of a joint school district," the granting of the petition, and matters subsequently to be determined. There could be neither law nor logic in holding that the finding of the county superintendents was in part final and in part not final; final as to the adjustment of property rights between the districts, but not final as to the establishment of the joint district. In other words, by an appeal to the county commissioners, the action of the county superintendents in forming the joint district could be reversed, but the adjustment of "all property, debts and liabilities" could not be. Such a holding would lead to this result: A joint district is formed out of several old districts in adjoining counties, and the aggregate property and liabilities of these several old districts is adjusted and proportioned among the new districts. Upon appeal, the

county commissioners annul the order forming the joint district, but having no power to disturb the adjustment of the property and liabilities, that finding remains as fixed by the county superintendents, and the several old districts find themselves sharing their property and liabilities with contiguous school districts in adjoining counties, with no added benefits on the one hand nor increased burdens on the other. To state such a theory is to refute it. It is plainly apparent that no such absurd result was ever intended by the legislature, and that the last sentence of the section giving finality to the action of the county superintendents was intended to cover all their authorized acts and doings in the formation of joint school districts from contiguous territory in two or more adjacent counties.

The judgment is reversed, and the cause remanded to the lower court with instructions to grant the writ as prayed for and enter its decree in accordance with the rule here announced.

CROW, C. J., ELLIS, MAIN, and FULLERTON, JJ., concur.