40 P.3d 656 (2002)
ATU LEGISLATIVE COUNCIL OF WASHINGTON STATE; and Washington State Transit Association, Respondents,
v.
STATE of Washington, Appellant,
Benton County; Bobbi Gagner, auditor of Benton County; Franklin County; Zona Lenhart, auditor of Franklin County; Clallam County; Ken Foster, auditor of Clallam County; Snohomish County; Bob Terwilliger, auditor of Snohomish County; Clark County; Greg Kimsey, auditor of Clark County; Cowlitz County; Kristina K. Swanson, auditor of Cowlitz County; Grant County; Bill Varney, auditor of Grant County; Grays Harbor County; Vern Spatz, auditor of Grays Harbor County; Thurston County; Sam S. Reed, auditor of Thurston County; Island County; Suzanne Sinclair, auditor of Island County; Jefferson County; Donna M. Eldridge, auditor of Jefferson County; Kitsap County; Karen Flynn, auditor of Kitsap County; Chelan County; Evelyn Arnold, auditor of Chelan County; Douglas County; Thad Duvall, auditor of Douglas County; Mason County; Al Brotche, auditor of Mason County; King County; Don Eklund, auditor of King County; Pacific County; Ida Taylor, auditor of Pacific County; Pierce County; Cathy Pearsall-Stipek, auditor of Pierce County; Whitman County; David G. Repp, auditor of Whitman County; Skagit County; Kathy Hill, auditor of Skagit County; Spokane County; Vicky Dalton, auditor of Spokane County; Lewis County; Gary E. Zandell, auditor of Lewis County; Walla Walla County; Karen Martin, auditor of Walla Walla County; Whatcom County; Shirley Forslof, auditor of Whatcom County; Yakima County; Doug Cochran, auditor of Yakima County; all political subdivisions of the State of Washington, Respondents.
No. 70829-1.
Supreme Court of Washington, En Banc.
Argued September 20, 2001.
Decided February 14, 2002.
*657 Christine Gregoire, Attorney General, Jeffrey David Goltz and Jerald R. Anderson, Assts., Olympia, for Appellants.
Steven Lowe, Franklin County Prosecutor, Darin R. Campbell, Deputy, Pasco; Christopher Shea, Clallam County Prosecutor, Christopher Melly, Deputy, Port Angeles; Jim Krider, Snohomish County Prosecutor, Gordon W. Sivley, Deputy, Everett; Ed Holm, Thurston County Prosecutor, David V. Klumpp, Deputy, Olympia; Gregory Banks, Island County Prosecutor, David L. Jamieson, Jr., Deputy, Coupeville; Arthur D. Curtis, Clark County Prosecutor, Curtis G. Wyrick, Deputy, Vancouver; Susan I. Baur, Cowlitz County Prosecutor, Ronald S. Marshall, Deputy, Kelso; John Knodell, Grant County Prosecutor, Stephen J. Hallstrom, Deputy, Ephrata; H. Steward Menefee, Grays Harbor County Prosecutor, Jennifer L. Wieland, Deputy, Montesano; Jueliel Dalzell, Jefferson County Prosecutor, David W. Alvarez, Deputy, Port Townsend; Russell Hauge, Kitsap County Prosecutor, Alan L. Miles, Deputy, Cassandra Noble, Port Orchard; Gary P. Burleson, Mason County Prosecutor, Michael E. Clift, Deputy, Shelton; Michael Smith, Pacific County Prosecutor, South Bend; James H. Kaufman, Whitman County Prosecutor, Ronald D. Shirley, Deputy, Colfax; Steven Tucker, Spokane County Prosecutor, James P. Emacio, Deputy, Spokane; James Nagle, Walla Walla County Prosecutor, Walla Walla; Jeffrey Sullivan, Yakima County Prosecutor, Ronald S. Zirkle, Deputy, Yakima; Gary Riesen, Chelan County Prosecutor, Wenatchee; Steven M. Clem, Douglas County Prosecutor, Waterville; Norm Maleng, King County Prosecutor, Jessica L. Hardung, Deputy, Janine E. Joly, Deputy, Seattle; Gerald Horne, Pierce County Prosecutor, Roger J. Miener, Deputy, Tacoma; Thomas Verge, Skagit County Prosecutor, Hilary A. Thomas, Deputy, Mount Vernon; Jeremy Randolph, Lewis County Prosecutor, Chehalis; David McEachran, Whatcom Couty Prosecutor, Randall J. Watts, Deputy, Bellingham; Langabeer, Tull & Cuillier, Richard L. Langabeer, Mark J. Lee, Bellingham, for Respondents.
*658 OWENS, J.
We revisit the aftermath of Initiative 695 (I-695).[1] When that measure was held unconstitutional, the legislature passed Senate Bill 6865 (SB 6865),[2] repealing the state motor vehicle excise tax (MVET) and setting license tab fees at $30. We now address whether SB 6865 repealed RCW 35.58.273a municipal tax historically collected with the MVETby implication.
Plaintiffs-Respondents Amalgamated Transit Union Legislative Council of Washington State (ATU) and Washington State Transit Association together represent transit workers' labor unions and 26 Washington transit agencies. They filed this action in Thurston County Superior Court seeking a declaratory judgment that SB 6865 did not repeal the special excise tax levied under RCW 35.58.273, and that the state continues to have the duty to collect it. The auditors of a number of counties, defendants below and respondents here, sought a declaration that if the special excise tax is not repealed, it is the state's responsibility to collect it. The trial court declared that the special excise tax was not repealed, and that the state has the duty to collect it. Defendant-Appellant State of Washington sought direct review in this court, asserting that the special excise tax was impliedly repealed by SB 6865, and that, if not, either municipal authorities or the county auditors, not the state, must collect it. We affirm the trial court.

FACTS
Before 1-695, the state imposed the statewide MVET at the rate of 2.2 percent on the value of a motor vehicle. Former RCW 82.44.020(1) (1998), repealed by Laws of 2000, 1st Spec. Sess., ch. 1, § 2, eff. Jan. 1, 2000. 1-695 repealed this tax, and replaced it with a flat fee for license tabs of $30. After 1-695 was held to be unconstitutional, the legislature enacted SB 6865 in its stead. SB 6865 repealed RCW 82.44.020, the MVET, and certain other code sections (though not nearly as many as 1-695), and set the license tab fee at $30.[3]
The legislature had also given municipalities the authority to levy a special excise tax on the value of motor vehicles at a rate not to exceed .725 percent. RCW 35.58.273. The special excise tax may be levied to fund local public transit projects. For purposes of the special excise tax, "municipality" includes counties, municipal corporations, and various public transit areas whose boundaries do not necessarily follow city, county, or even zip code boundaries. See RCW 35.58.272.[4] Twenty-six local authorities in Washington have levied the special excise tax.
However, the legislature provided that the special excise tax would be credited against the MVET. RCW 35.58.273. This meant that a taxpayer living in a municipality that had levied the special excise tax was allowed to credit that tax against her MVET tax liability. All Washington motor vehicle owners therefore paid the same total tax, 2.2 percent, irrespective of whether they lived in municipalities levying the special excise tax. The effect of levying the special excise tax was that the municipalities were permitted to keep a portion of the state's MVET revenues. In the ordinances imposing the special excise tax, some municipalities particularly observed that the decision to levy the tax did not increase the tax burden on their constituents.
*659 Another effect of the MVET credit was that the special excise tax did not have to be collected separately. The state had only to share a portion of its MVET revenues with those municipalities levying the special excise tax. The special excise tax is therefore "due and payable" to the Department of Licensing (DOL). RCW 35.58.276; RCW 82.44.060. The special excise tax was never itemized on a taxpayer's registration form, nor were its funds kept in separate accounts. The legislature simply provided in RCW 82.44.150 for the state treasurer to remit a portion of MVET revenues to the appropriate municipalities if they levy the special excise tax. RCW 82.44.150(1) directs DOL to advise the state treasurer of the proper amount; RCW 82.44.150(2)-(3) authorize the deposits; and RCW 82.44.150(4)-(6) provide for reporting by the municipalities receiving the deposits and for ensuring that they have the transit programs in place required for levying the special excise tax.
This method was approximate. When a municipality levied the special excise tax, motor vehicle owners residing in the municipality were not separately identified for having some of their MVET remitted to the municipality. Instead, DOL had to use the formula in RCW 82.44.150(1). DOL multiplied the total MVET revenues from a county by the ratio of the population of the municipality to the population of the county. Thus, a portion of the MVET collected in a county was deemed to be collected from a given municipality based on population, not based on the actual residence of motor vehicle owners. The state treasurer would use these population based figures to establish the total MVET collected from each municipality, and then remit the fraction of the MVET equal to the special excise tax imposed by the municipality.
The duty to make this calculation naturally fell to DOL, since DOL was responsible for calculating the total MVET due from each vehicle owner in the state. Collecting the MVET required DOL to establish the value of a motor vehicle. It accomplished this with the Vehicle Field System, a computer program created, owned, and maintained by DOL. The amount of tax due from a vehicle owner was calculated by the Vehicle Headquarters System, another DOL computer program.
The MVET and the special excise tax were historically collected by DOL in cooperation with the county auditors.[5] DOL had a contract with each county auditor to act as DOL's agent for collecting the MVET. Although the auditors received checks and distributed license tabs, the checks were payable to DOL, and DOL provided the registration forms and tabs. The contracts state that "DOL has the general responsibility... for the collection of vehicle and vessel licensing fees, excise taxes and other fees and taxes." Clerk's Papers (CP) at 28, 55.
1-695 threw the entire scheme into disarray. It repealed the MVET itself, RCW 82.44.020, as well as certain other fees and taxes and much of the supporting statutory material, including RCW 82.44.150. 1-695 did not expressly repeal RCW 35.58.273, but many at the time of its passage wondered whether it impliedly did so. In an informal letter to Senator Thibaudeau and Representative Fisher, the attorney general's office concluded that the special excise tax was impliedly repealed by 1-695, because the continuation of the special excise tax could not be harmonized with repeal of the MVET. CP at 506-09. In response to 1-695 and that letter, DOL stopped collecting the MVET and the special excise tax on January 1, 2000, and has collected neither since then.

ISSUES
The first issue we address is whether SB 6865 repealed RCW 35.58.273 by implication. Because we hold that it did not, we also address whose duty it is to collect the special excise tax.

ANALYSIS
Repeal by implication is strongly disfavored. Tollycraft Yachts Corp. v. *660 McCoy, 122 Wash.2d 426, 439, 858 P.2d 503 (1993). The legislature is presumed to be aware of its own enactments, and the court will presume that the legislature did not intend to repeal a statute impliedly if the legislature has provided an express list of statutes to be repealed. Ropo, Inc. v. City of Seattle, 67 Wash.2d 574, 578, 409 P.2d 148 (1965). Nevertheless repeal by implication is properly found in either of two situations:
[(1) The subsequent legislation] covers the entire subject matter of the earlier legislation, is complete in itself, and is evidently intended to supersede the prior legislation on the subject, or ... [ (2)] the two acts are so clearly inconsistent with, and repugnant to, each other that they cannot, by a fair and reasonable construction, be reconciled and both given effect.
Abel v. Diking & Drainage Improvement Dist. No. 4, 19 Wash.2d 356, 363, 142 P.2d 1017 (1943) (citations omitted).
The first test boils down to one of legislative intent. The state points to several facts which it claims show that the legislature meant for SB 6865 to repeal the special excise tax. However, the first observation we make of SB 6865 stems from the canon of construction expressio unius est exclusio alterius the inclusion of one implies the exclusion of anotherand leans strongly against the state. SB 6865 sets forth a list of code sections to be repealed, and RCW 35.58.273 is not among them. If the legislature had intended to repeal RCW 35.58.273, presumably it would have said so. Our task is to determine if the facts identified by the state showing intent to repeal the special excise tax are more persuasive than this most logical evidence to the contrary.
The state notes that the special excise tax was referenced in the final bill report of SB 6865. In the "Background" section, the report says:
A local tax was authorized for public transit districts equal to 0.725 percent of the value of the vehicle. The local tax was credited against the state tax.
CP at 364; Br. of Appellant App. E at 1. The bill report summarized the effect of 1-695, and the effect of the bill, repealing various taxes. Where the legislature's intent is not clear from the words of a statute, we may refer to such legislative history for clarification. Biggs v. Vail, 119 Wash.2d 129, 134, 830 P.2d 350 (1992). The state concludes from the report that SB 6865 was intended to repeal the same statutes the people thought would be repealed by 1-695, and that the legislature showed its intent to repeal the special excise tax by referencing it in a list of other statutes to be repealed.
The state's conclusions from the bill report are plainly wrong. Even if I-695 impliedly repealed the special excise tax, which the state assumes without support, it makes no sense to say that SB 6865 was meant to repeal the same statutes as I-695. Although I-695 was certainly before the legislature when SB 6865 was being drafted, SB 6865 repeals considerably fewer code sections than were threatened by I-695. It is readily apparent from the faces of the two acts that SB 6865 repeals less than I 695. Nor does the reference to the special excise tax show intent to repeal it. Instead, it shows that the legislature was in fact aware of it (as it is presumed to have been), had the wherewithal to mention it once, and chose not to mention it a second time, where it would certainly have had the effect the state urges, in the text of the bill.
The state directs us to the floor debates of SB 6865. Although there was very little debate, it indicates that the legislature meant SB 6865 to restore what I-695 had done before it was declared unconstitutional. The state says that the legislature thought I-695 impliedly repealed the special excise tax because the attorney general's letter told it so. Therefore, if the legislature had intended SB 6865 to restore I-695, it must have intended it to repeal the special excise tax.
However, this court gives little deference to attorney general opinions on issues of statutory construction. Wash. Fed'n of State Employees v. Office of Fin. Mgmt., 121 Wash.2d 152, 164-65, 849 P.2d 1201 (1993). Moreover, the legislature is presumed to be aware of judicial interpretations of statutes. In re Marriage of Little, 96 Wash.2d 183, 189-90, 634 P.2d 498 (1981). This court has previously concluded that RCW 35.58.273 is *661 an independent tax, chiefly because it is levied at the discretion of the municipality. Mun. of Metro. Seattle v. O'Brien, 86 Wash.2d 339, 342-46, 544 P.2d 729 (1976). While O'Brien noted that the special excise tax was not an additional tax amount, that did not conflict with its conclusion that it was the municipality's tax to levy. It is not established that I-695 impliedly repealed the special excise tax. Nor does a legislator's intent to reduce the state excise tax to $30 equate to intent to eliminate local tax powers. References on the senate floor to 1-695 do not reveal intent to repeal the special excise tax.
The state argues that two measures enacted to fill the void in transit funding left by I-695 show that the legislature believed that the special excise tax was repealed. These two measures were a one-time appropriation from the general fund, Laws of 2000, 2d Spec. Sess., ch. 1, § 726, and authorization to transit agencies to impose a higher local sales tax, Laws of 2000, 2d Spec. Sess., ch. 4, § 16. However, it is equally likely that these measures were meant to alleviate the immediate effects of DOL's decision to stop collecting both the MVET and the special excise tax. We cannot conclude from the record before us that SB 6865 was meant to repeal RCW 35.58.273.
Repeal by implication is also proper if two acts are so clearly inconsistent with, and repugnant to, each other that they cannot, by a fair and reasonable construction, be reconciled and both given effect. The state argues that RCW 35.58.273 cannot be reconciled with repeal of the MVET for three reasons. The state claims that RCW 35.58.273 is impliedly repealed because the special excise tax can no longer be credited against the MVET, because the apportionment procedure of RCW 82.44.150 no longer makes sense, and because of the administrative difficulty of collecting the special excise tax. These arguments are unconvincing.
The special excise tax is not inconsistent with repeal of the MVET simply because it was formerly credited against the MVET. The tax credit of RCW 35.58.273 is a provision that no longer has any significance, but it does not conflict in any way with levying and collecting the special excise tax. The credit becomes obsolete, but does not cause the underlying tax to fail: cessante ratione legis, cessat et ipsa lexthe reason for the law ceasing, the law itself ceases.
The same applies to RCW 82.44.150. This mechanism for remitting part of the MVET back to the municipalities levying the special excise tax also becomes obsolete, but it does not take the special excise tax down with it. The state argues that the special excise tax cannot be harmonized with repeal of the MVET because the procedure for remitting the special excise tax to the municipalities in RCW 82.44.150 can no longer be carried out. Thus, the state claims, the question is not whether a statute is impliedly repealed, but which statute is impliedly repealed. This argument does not follow. The state seems to be saying that because RCW 82.44.150 cannot be harmonized with SB 6865, then RCW 35.58.273 must be repealed.
SB 6865 left much in the code that is now superfluous without the MVET. For example, RCW 82.44.110 dictated how MVET revenues were to be distributed into various accounts. Obviously this statute is no longer needed, and this court is not required to decide that it has been repealed for the executive branch to stop using it. The trial court properly declared that the state need not comply with those provisions of RCW 82.44.150 that assume the existence of the MVET.
The state's last reason why we should find that the special excise tax has been repealed by implication is the administrative burden that will attend our decision to the contrary. The boundaries of the districts levying the special excise tax do not in all cases follow city, county, or even zip code boundaries. The trial judge himself acknowledged that only "quagmire" will result from any attempt to collect the special excise tax independently. Verbatim Report of Proceedings at 15-17. However, the state has cited no authority for the proposition that the relative convenience to the executive branch bears on our interpretation of legislative enactments. Though it may create headaches, repeal of the MVET puts no legal obstacle before the levying and collecting of the special excise *662 tax. Moreover, the state currently collects the Regional Transit Authority (RTA) excise tax under RCW 81.104.160, which presents similar problems in determining who is inside and outside the RTA district. Thus the problems complained of are not insurmountable. The administrative burden of collecting the special excise tax independently does not demonstrate that the tax is inconsistent with repeal of the MVET.
The dissent says we place too much weight on the fact that SB 6865 contains specific repealers and RCW 35.58.273 is not among them. This is the best possible evidence that the legislature did not intend to repeal RCW 35.58.273, short of a new section saying so. Citing two cases, the dissent observes that even where legislative intent is this clear, the presumption against repeal may be overcome by even clearer inconsistency. But unlike SB 6865, the enactments at issue in those cases also included extensive substantive provisions directly contrary to the statutes alleged to be impliedly repealed.
In Great Northern Railway Co. v. Glover, 194 Wash. 146, 77 P.2d 598 (1938), and El Coba Co. Dormitories, Inc. v. Franklin County Public Utility District, 82 Wash.2d 858, 514 P.2d 524 (1973), new enactments included specific repealers but did not include prior laws found to be impliedly repealed. In Great Northern, prior law gave local townships in Spokane County the power to raise revenue and maintain county roads. The new enactments reclassified all Washington roads and gave the same powers to the county commissioners. Great Northern, 194 Wash. at 153-55, 77 P.2d 598. Obviously both entities could not wield the same powers. In El Coba, the new enactments set out a new comprehensive claims statute governing claims filed against "all political subdivisions" of the state, and had different requirements for suing the defendant public utility district. El Coba, 82 Wash.2d at 861, 514 P.2d 524. As in Great Northern, the new enactments in El Coba were obviously incompatible with prior law.
What is there in this case? There is a lone substantive provision setting license tab fees at $30 per year, and a list of eight sections to be repealed. The dissent compares this to large, comprehensive, policy-reforming statutory schemes. But there is no inconsistency in the simultaneous presence of a statewide license tab fee and local taxes on top of it. If there were, then the RTA tax levied under RCW 81.104.160 would be impliedly repealed too. It too authorizes local districts to lay motor vehicle excise tax at their discretion. It differs from the special excise tax in that it was not credited against the MVET and voter approval is required. But neither it nor SB 6865 is inconsistent in the way Great Northern and El Coba demonstrate.
Finally, the reason for applying the implied repeal doctrine is not present in this case. The letter the attorney general sent to the legislature does not show that legislators intended to repeal RCW 35.58.273 because they "had it in mind" when they passed SB 6865: it shows the reverse. It is not logical to say that the legislature was apprised of a statute, passed a bill without mentioning it, and meant to repeal it. We explained why we have a doctrine of implied repeal in Local No. 497, International Brotherhood of Electrical Workers v. Public Utility District No. 2 of Grant County, 103 Wash.2d 786, 790, 698 P.2d 1056 (1985):
This disfavor [for repeal by implication] is the result of a presumption that the Legislature acts with a knowledge of former related statutes and would have expressed its intention to repeal them. However, this presumption runs directly counter to the real probability of legislative oversight that occurs when the Legislature deals with the detail in the mass of statute law within the state. Had the Legislature been aware that it was repealing [RCW 35.58.273], what would it have done? Searching for legislative intent in these circumstances is usually fruitless. The very reason we must determine repeal by implication is that presumably the Legislature was unaware of the possible repeal result. It is difficult to ascertain intent about something of which one is unaware.
(Citations omitted.) It does not make sense to apply the implied repeal doctrine here because of the attorney general's letter. We cannot presume in this case that the legislature was unaware of the possible repeal result *663 because we know for a fact it was aware of that possibility. We need not speculate about what the legislature would have done had it known about RCW 35.58.273 because the legislature did know about itand did not repeal it.
ATU's first amended complaint also sought a declaration that the state is obligated to collect the special excise tax when a municipality elects to levy it. CP at 115. Likewise the county auditors sought a declaration from the trial court of their rights and duties with respect to collection of the special excise tax.[6]See, e.g., Answer of Snohomish County, CP at 376. The state argues that either the county auditors or the taxing municipalities themselves must collect the special excise tax. The trial court declared that it was the state's duty to collect it. Again we affirm.
The statutory provisions applicable to the special excise tax show that it is the state's, particularly DOL's, duty to collect it. We have already noted that the special excise tax is "due and payable" to DOL. RCW 35.58.276; RCW 82.44.060. The taxpayer has the duty to pay DOL, and so DOL has the ultimate responsibility to receive a taxpayer's payment, even though county auditors may act as DOL's agents to take possession of the funds. DOL, not the county auditors, has the right to appoint others. RCW 35.58.276; RCW 82.44.140. Finally, RCW 35.58.276 specifically provides that the special excise tax is to be "remitted to the state at no cost to the municipality."
Alternatively, the state argues that DOL has the discretion to collect the special excise tax or to leave it for the county auditors, and that DOL has never exercised its discretion to collect the tax. In fact, however, DOL has collected the special excise tax along with the MVET, and has contracted with the county auditors to collect licensing fees and excise taxes as DOL's agents. Thus even if the state were correct that DOL's collection of the special excise tax were discretionary only, DOL has nevertheless assumed that responsibility.
DOL also has the statutory authority to calculate the amount of special excise tax due from vehicle owners. RCW 82.44.041 gives DOL the duty and means to determine the value of vehicles owned by Washington residents. DOL has historically done this, and maintains the computer programs to do it. DOL currently collects all other excise taxes and fees relating to the licensing of motor vehicles, and is the only agency with the power to withhold license tabs for nonpayment.

CONCLUSION
The trial court correctly declared that the power to levy the special excise tax under RCW 35.58.273 and DOL's duty to collect it once it is levied are unaffected by SB 6865's repealing the MVET. The spare legislative history of SB 6865 does not reveal intent to repeal RCW 35.58.273, and the administrative inconvenience of collecting the tax does not amount to legal inconsistency between RCW 35.58.273 and SB 6865. We are mindful of the awkwardness created by our decision; but, as has been observed, "it is the legislature's jobnot oursto stem the tide of potential absurd results that might result from impartially applying the plain meaning of statutory language."[7] The dissent accuses us of ignoring a time-honored canon of statutory construction. But the two tests for implied repeal do not permit wholesale "construction" of language whose meaning is perfectly clear. We are not here debating what SB 6865 means; we know what it means. SB 6865 sets license tab fees at $30 and repeals eight code sections. No inconsistency results from a municipality's decision to lay a tax upon itself over and above state taxes imposed by the legislature. Nor is there any way, consistent with prudential decision making, to conclude that SB 6865 evinces the intent to repeal the special excise tax. At very best, the evidence points both ways. This is insufficient to excuse this court from enforcing the people's laws.
AFFIRMED.
SMITH, IRELAND, BRIDGE and CHAMBERS, JJ., concur.
*664 SANDERS, J. (concurring in part, dissenting in part).
I agree the legislature did not repeal RCW 35.58.273. It may well be, as urged by the dissent, that that may have been the subjective intent, but statutes must be in writing and if they do not say what the legislature meant to say it is not our job, or prerogative, to rewrite them. Unfortunately it is the people who must pay the price of legislative ineptitude. But that is the system.
I disagree, however, that the state must collect the tax. RCW 35.58.276 provides that "[t]he excise tax ... shall be collected by the county auditor ... or by a designee of the director." Whether or not the state has collected the tax in the past is not determinative; rather it is the state's option not to do so. Now the state has elected not to do so. So it need not. The majority errs by compelling it to do what it has the lawful option to decline.
MADSEN, J. (dissenting).
The majority says that "`it is the legislature's jobnot oursto stem the tide of potential absurd results that might result from impartially applying the plain meaning of statutory language.'" Majority at 663 (quoting Sundquist Homes, Inc. v. Snohomish Pub. Util. Dist. No. 1, 140 Wash.2d 403, 416, 997 P.2d 915 (2000) (Sanders, J., dissenting)). This proposition, borrowed from a dissenting opinion, is contrary to decades of cases standing for exactly the opposite propositionthat this court will not construe a legislative enactment to effect absurd results.
Rather than interpret the statutes in a way that leads to unlikely, absurd, and strained results, I would hold that the special excise tax provisions of RCW 35.58.273 were impliedly repealed when the Legislature repealed the state motor vehicle excise tax (MVET). I would reach this conclusion under the rule that repeal by implication occurs where two acts are "`so clearly inconsistent with, and repugnant to, each other that they cannot, by a fair and reasonable construction, be reconciled and both given effect.'" Wash. Fed'n of State Employees v. Office of Fin. Mgmt., 121 Wash.2d 152, 165, 849 P.2d 1201 (1993) (quoting Abel v. Diking & Drainage Improvement Dist. No. 4, 19 Wash.2d 356, 363, 142 P.2d 1017 (1943)). The special excise tax was inextricably linked to the MVET, so that with repeal of the MVET by Senate Bill 6865, Laws of 2000, 1st Spec. Sess., ch. 1, the special excise tax must fall, too.
Although the inconsistency between SB 6865 and the special excise tax, alone, warrants the conclusion that the special excise tax was impliedly repealed, I also note that the majority's assessment of legislative intent as to whether the special excise tax provisions continue to exist fails to acknowledge that the Legislature intended what the people intended by passing Initiative 695that excise taxes on motor vehicles would be $30. Instead, the majority's holding means that on a vehicle valued at $12,000, the owner will have to pay at least $117 ($30 plus the special excise tax of $87) in those areas opting to levy and collect the maximum allowable special excise tax. Thus, one-third of the excise tax on vehicles is reestablished in those areas under the majority's holding. There is, however, significant evidence that this result is not what the Legislature intended when it acted to carry out the wishes of the voters following invalidation of I-695 on constitutional grounds.

Inconsistency between Special Excise Tax and Act Repealing MVET
From its inception, the special excise tax authorized by RCW 35.58.279 has been a portion of the MVET, a fact this court has previously, and expressly, acknowledged. Mun. of Metro. Seattle v. O'Brien, 86 Wash.2d 339, 343, 544 P.2d 729 (1976). The tax has never been an independent, "stand-alone" tax. The entire statutory scheme, prior to repeal of the MVET, bears this out.
RCW 35.58.273(1) states that "[a] municipality is authorized to levy and collect a special excise tax ... provided that in no event shall the tax be less than one dollar and ... the amount of such tax shall be credited against the amount of the excise tax levied by the state under RCW 82.44.020(1)." (Emphasis added.) The proviso thus requires that the special excise tax be a credit against the MVET. In order for this crediting *665 to occur, the MVET must be imposed. The special excise tax was not administered or collected separately from the rest of the MVET. It was not separately listed on the initial registration or MVET bills sent to owners of motor vehicles. It was collected at the same time as the rest of the MVET, primarily by county auditors and subagents under county contract, subject to approval by the Department of Licensing. Proceeds were never identified separately or tracked separately. All of this was pursuant to statutes.
RCW 82.44.150 provided for distribution of the special excise tax revenues. RCW 82.44.150 existed prior to enactment of RCW 35.58.273, and provided for disbursements of the MVET from what at that time was a separate motor vehicle excise tax fund. See Laws of 1961, ch. 15, § 82.44.150 (providing for distribution of motor vehicle excise tax fund generally). When RCW 35.58.273 was enacted, RCW 82.44.150 was amended to include provisions for distributing this portion of the MVET. Laws of 1969, 1st Ex.Sess. ch. 255, § 15(1), 2(c), (6) (see § 8). The statute continued to provide for disbursement of the rest of the MVET. In 1974, the special motor vehicle excise tax fund was abolished and its assets transferred to the general fund. Laws of 1974, 1st Ex.Sess., ch. 54 (amending RCW 35.58.278 and RCW 82.44.150). RCW 82.44.150 continued to provide for disbursement of motor vehicle excise taxes, including the special excise tax under RCW 35.58.273, with any funds remaining after distribution to be transferred to the general fund.
Not until 1990 was the statute amended to provide for public transportation disbursements alone. In that year, the Legislature split off other disbursement provisions, for example, for police, fire, and public health purposes, from RCW 82.44.150, and placed them in other statutes. Laws of 1990, ch. 42, § 209; see, e.g., id. § 309.
Thus, the statutory history establishes that rather than a separately treated, independent tax, the special excise tax was, from the outset, treated as part of the MVET, both in assessment and in disbursement.
This conclusion is borne out by other provisions in RCW 82.44.150. RCW 82.44.150(3)(a) is the present form of a matching provision which has long been a part of the statute. It provides that amounts remitted by the State Treasurer to a municipality levying the special excise tax of RCW 35.58.273(4) from such revenues "shall not exceed" in any calendar year locally generated tax revenues, other than the special excise tax, which are budgeted for public transportation purposes, plus sales and use tax equalization distributions from the MVET under RCW 82.14.046. Thus, before repeal of the MVET, RCW 82.44.150 provided that a municipality might not receive all the special excise tax it levied, depending upon other locally generated revenues and tax equalization distributions. The statutory scheme did not, in short, simply provide a mechanism for return to a municipality of an independent, stand-alone tax.
RCW 82.44.150(6) operates similarly. That provision states that "[a]ny municipality levying and collecting a tax under RCW 35.58.273" which failed to have a public transit system in effect or a contract for such a system within a year of the initial effective date of the tax "shall return to the state treasurer all motor vehicle excise taxes received" under section 3 of the statute. Section 3 of RCW 82.44.150 is the section covering disbursements of the motor vehicle excise tax revenues imposed and collected under RCW 35.58.273. Thus, RCW 82.44.150 says two very important things relevant to the issue before the court. It also says that not all funds collected pursuant to RCW 35.58.273 will necessarily be disbursed to and remain with a municipality, much less as an independent, stand-alone tax. Second, it quite expressly states that any funds collected under RCW 35.58.273 were "motor vehicle excise taxes," i.e., MVET funds. In short, special excise taxes collected under RCW 35.58.273 were MVET funds which would be returned to the state as MVET funds if the municipality did not carry out public transit system plans in a timely manner.
Under the statutory scheme as a whole, RCW 35.58.273 allowed an allocation of part of the motor vehicle tax revenues generated within a municipality to be used for local public transit programs at the option of the *666 municipality. Allocation of part of the total tax cannot occur, however, where no MVET is collected.
With repeal of the MVET, the entire scheme falls apart. The special excise tax cannot be assessed, collected, and remitted to the state treasurer as part of the MVET, as was always the case before. The special excise tax cannot be credited against the MVET. A portion cannot be retained by the state under RCW 82.44.150(3)(a) if the total revenues under RCW 35.58.273(1) exceed locally generated tax revenues and tax equalization distributions. It cannot be returned to the state as part of the MVET if the municipality does not timely pursue public transit system purposes, as required by RCW 82.44.150(6).
Further evidence that the tax was not an independent tax is the calculation provided for in RCW 82.44.150(1) to determine how much of the MVET was to be remitted to a municipality which levies and collects the special excise tax. The amount was determined by dividing the population of the municipality by the population of the county in which the municipality is located, and then multiplying the answer by the total MVET from the county. RCW 82.44.150(1). The product is "the amount of excise taxes from motor vehicle owners residing within such municipality or portion thereof." Id. This calculation also ties the special excise tax to the MVET, and evidences legislative intent that the special excise tax was essentially a portion of the total MVET, which the Legislature allowed municipalities to claim at their option. The distribution scheme in RCW 82.44.150(1) shows, as does RCW 35.58.273 itself, the intertwined nature of the special excise tax and the MVET. That calculation, as the majority freely acknowledges, simply cannot be made where no MVET is collected; it cannot be applied to the special excise tax alone.
This court previously addressed RCW 35.58.279 in 1976, less than a decade after the statute's enactment, to decide whether under state constitution article VIII, section 4, the special tax authorized by RCW 35.58.273 could be disbursed only upon appropriation by the Legislature. Mun. of Metro. Seattle, 86 Wash.2d 339, 544 P.2d 729. At the outset, the court said, "it is essential to set out the general scheme of the state motor vehicle excise tax [the MVET], for it is a portion of that tax which is involved here." 86 Wash.2d at 343, 544 P.2d 729 (emphasis added). The court then described the motor vehicle excise tax, at the time two percent, levied by the State on the fair market value of motor vehicles. The court then said:
Speaking generally and summarily, the 1969 act [enacting RCW 35.58.279 and related statutes] authorized the municipalities to use a portion of this state motor vehicle excise tax solely for the operation and development of public transportation systems. This is not an additional motor vehicle excise tax, but rather is a portion of revenues generated and contained within the statutory 2 percent.

86 Wash.2d at 343, 544 P.2d 729 (some emphasis added).
The majority is wrong when it states that the court in Municipality of Metropolitan Seattle concluded that the special excise tax in RCW 35.58.273 is an independent tax. Majority, at 10. Nowhere in the opinion is there any such conclusion, explicit or inferential. The issue before the court was whether the tax revenues under the statute were funds held by the state treasurer as custodian of a special fund of a proprietary nature, designed to meet certain specific objectives, because if so, the tax moneys were distributable without specific legislative appropriation. The court examined in detail the statutory scheme in which "the legislature ... directed the municipalities to make a series of local decisions concerning municipally owned transportation systems," including whether to levy the tax, the amount to be levied subject to the statutory maximum, investment of the tax proceeds, and whether to pledge the tax to secure bonds. Mun. of Metro. Seattle, 86 Wash.2d at 344-45, 544 P.2d 729. The Legislature also provided for distribution of the funds to the municipality in RCW 82.44.150, which the court found compelling evidence of legislative intent that the funds were not subject to appropriation. Mun. of Metro. Seattle, 86 Wash.2d at 346, 544 P.2d 729.
*667 The court was crystal clear in its assessment of the relationship between the special excise tax and the MVET: the special excise tax was a part of the MVET, segregated for local public transportation purposes. As explained above, the conclusion of the court is borne out by the statutory scheme existing prior to repeal of the MVET.
I would hold that the act repealing the MVET, SB 6865, is clearly inconsistent with and repugnant to the continued existence of the special excise tax provision in RCW 35.58.273. Accordingly, I would hold that the special excise tax provision has been impliedly repealed.
The majority, however, has a three-part answer to the issue of implied repeal based on inconsistency between acts: the tax credit provision of RCW 35.58.273 is now meaningless, the distribution provisions in RCW 82.44.150(1) are now meaningless, and the State can figure out another collection and distribution scheme. But, nevertheless, regardless of these results, the special excise tax provisions of RCW 35.58.273 still stand.
The majority's three-part analysis on this question is unconvincing. First, it says that the tax crediting requirement of RCW 35.58.273 simply became obsolete, but does not cause the underlying tax to fall. However, one overriding principle is apparent from the entire statutory scheme. The Legislature obviously intended that all motor vehicle owners would pay the same total tax, but in those municipalities opting to levy and collect the special excise tax, that portion of the total would be used to fund local transit programs. Following repeal of the MVET, under the majority's reasoning, however, all motor vehicle owners in the state are not subject to the same motor vehicle excise tax. Where municipalities opt to levy and collect the special excise tax under RCW 35.58.273, motor vehicle owners will pay considerably more than the $30 fee enacted by the Legislature to carry out the wishes of the people passing I-695.
The majority also asserts that the distribution provisions in RCW 82.44.150 simply retain no viability after repeal of the MVET, and therefore the State need not comply with that statute any longer. However, as the State correctly points out, there are no alternative collection and distribution procedures applying solely to the special excise tax. Perhaps more importantly, the majority's response fails to account for the fact that RCW 82.44.150 has more impact on the issue before the court than simply a matter of how to disburse funds. As explained above, several key provisions of the statute, as well as its history, establish that the special excise tax levied under RCW 35.58.273 has always been part and parcel of the total MVET.
Insofar as administrative problems created by the majority's holding, the result is, as the trial court said, a quagmire. Collection and distribution procedures have always linked the special excise tax to the MVET; the entire scheme is now in disarray. The majority's answer is that the State can figure out some other way. The majority says that similar problems exist with respect to levying and collecting the Regional Transit Authority (RTA) excise tax under RCW 81.104.160, yet the State currently collects that tax. The "problems" are not at all comparable. The Legislature did not, in connection with the RTA, enact statutes addressing levy and collection, as it did for the special excise tax authorized by RCW 35.58.273. The Legislature did not fail to develop procedures to carry out its laws; the procedures were already in place. The "problems" occur here because the majority refuses to accept that the special excise tax under RCW 35.58.273 was simply part of the MVET, which was impliedly repealed when the MVET was repealed.
This is, as the majority says, an absurd result. It is, therefore, completely contrary to over a century of this state's cases holding that this court will not construe legislative acts to reach absurd results because, regardless of the "plain language" of an enactment, the court will not presume that the Legislature intended absurd results. E.g., LaMon v. Butler, 112 Wash.2d 193, 203, 770 P.2d 1027 (1989); State v. Vela, 100 Wash.2d 636, 641, 673 P.2d 185 (1983); State v. Gaines, 109 Wash. 196, 200, 186 P. 257 (1919); Delfel v. Hauson, 2 Wash. 194, 197, 26 P. 220 (1891); see also In re Pers. Restraint of Davis, 142 Wash.2d 165, 177, 12 P.3d 603 (2000); In re *668 Det. of A.S., 138 Wash.2d 898, 911, 982 P.2d 1156 (1999); Pudmaroff v. Allen, 138 Wash.2d 55, 65, 977 P.2d 574 (1999); In re Custody of Smith, 137 Wash.2d 1, 8, 969 P.2d 21 (1998); State v. Ammons, 136 Wash.2d 453, 457-58, 963 P.2d 812 (1998); Fray v. Spokane County, 134 Wash.2d 637, 648, 952 P.2d 601 (1998); Young v. Estate of Snell, 134 Wash.2d 267, 278, 948 P.2d 1291 (1997).[1]
The majority's absurd result is also an unnecessary result. The highly interconnected statutory scheme which existed prior to repeal of the MVET makes it abundantly clear that the special excise tax of RCW 35.58.273 was a part of the total MVET. The more reasonable conclusions are that the MVET and the special excise tax have always been interconnected, the special excise tax was a portion of the MVET allocated to local public transit programs if the local municipality opted to levy and collect the tax, and the act repealing the MVET is clearly inconsistent with and repugnant to the continued existence of the special excise tax and therefore impliedly repealed as well.

Legislative Intent
Although I need go no further, some of the majority's analysis respecting legislative intent bears comment. The majority concludes the Legislature did not intend any repeal of RCW 35.58.273. The majority heavily relies on the fact that while SB 6865, which repealed the MVET, expressly repealed other statutes, it did not expressly repeal RCW 35.58.273; and, in connection with floor debates on SB 6865, the majority discounts an informal attorney general letter on the basis that this court gives little deference to attorney general opinions on matters of statutory construction.
As to the fact that SB 6865 contained express repealers but did not expressly repeal RCW 35.58.273, the majority attributes too much weight to this fact in the face of evidence that with repeal of the MVET, the special excise tax of RCW 35.58.273 was impliedly repealed because of inconsistency between SB 6865 and RCW 35.58.273. As this court has noted, the presumption that express repealers of some statutes indicates no intent to repeal others not specified is overcome where there is clear inconsistency between the new enactment and the existing enactment. Great N. Ry. Co. v. Glover, 194 Wash. 146, 157, 77 P.2d 598 (1938); see El *669 Coba Co. Dormitories, Inc. v. Franklin County Pub. Util. Dist., 82 Wash.2d 858, 514 P.2d 524 (1973). As explained above in this opinion, repeal of the MVET is clearly incompatible with the continued existence of the special excise tax since the special excise tax was always part and parcel of the MVET itself.
As to the floor debates regarding SB 6865 which the majority summarily dismisses, those debates, while limited, indicate an intent to do the will of the people, i.e., to carry out the voters' intent when enacting I-695 to limit motor vehicle licensing fees to $30 and to eliminate the motor vehicle excise tax. The Legislature acted to carry out the voters' purpose immediately after I-695 was declared unconstitutional in King County Superior Court. SB 6865 was introduced three days after the trial court's ruling, it was passed by both houses of the Legislature without hearings within eight days of that ruling. There is in my mind no question as to what the Legislature intended. The special excise tax of RCW 35.58.273 is an excise tax on motor vehicles that will plainly increase the cost of vehicle licensing fees, in some cases far in excess of $30, contrary to the Legislature's intent, and the intent of the people, which the Legislature sought to carry out.
The majority's answer to this is, in part, to say that this court gives little deference to attorney general opinions as to matters of statutory construction, referring to an informal attorney general letter to a state senator and a state representative that concluded that the special excise tax of RCW 35.58.273 was impliedly repealed by 1-695. Majority at ___. The question is not, however, whether the informal letter was correct as to the legal effect of 1-695. The question is whether the Legislature, with its members having in mind that letter, intended that RCW 35.58.273 would be repealed with repeal of the MVET. If anything, the letter gave reason to think that express repeal of RCW 35.58.273 would be unnecessary, because it would be impliedly repealed with repeal of the MVET.
The majority also says that the decision in Municipality of Metropolitan Seattle, 86 Wash.2d 339, 544 P.2d 729 was a judicial interpretation, of which the Legislature was presumably aware, that RCW 35.58.273's special excise tax was an independent tax. The Legislature could hardly have been aware of such a holding, since there was no such holding, as explained above. However, the Legislature certainly could be presumed to have known that the court expressly said that the special excise tax was a portion of the MVET, because that is what the opinion in Municipality of Metropolitan Seattle said.

Conclusion
In construing acts of the Legislature, this court's duty is to give effect to the Legislature's intent insofar as it can be determined. In this case, the Legislature abolished the MVET in order to carry out the will of the people that licensing fees not exceed $30. Instead of effectuating the Legislature's intent, the majority ignores the clear statutory scheme tying the special excise tax inextricably to the MVET and declines to find that repeal of the MVET necessarily resulted in implied repeal of the special excise portion of that tax. Accordingly, I dissent.
NOTES
[1] Laws of 2000, ch. 1.
[2] S.B. 6865, 56th Leg., 1st Spec. Sess. (Wash. Mar. 31, 2000).
[3] 1-695 also required voter approval for tax increases. Laws of 2000, ch. 1, § 2. SB 6865 did not reenact this provision.
[4] For purposes of RCW 35.58.273, RCW 35.58.272 defines a "municipality" as:

any metropolitan municipal corporation which shall have been authorized to perform the function of metropolitan public transportation; any county performing the public transportation function as authorized by RCW 36.57.100 and 36.57.110 or which has established a county transportation authority pursuant to chapter 36.57 RCW; any public transportation benefit area established pursuant to chapter 36.57A RCW; and any city, which is not located within the boundaries of a metropolitan municipal corporation, county transportation authority, or public transportation benefit area, and which owns, operates or contracts for the services of a publicly owned or operated system of transportation[.]
[5] RCW 35.58.276 specifically provides that either DOL or the auditors may collect the special excise tax.
[6] Except for Yakima County.
[7] Sundquist Homes, Inc. v. Snohomish Pub. Util. Dist. No. 1, 140 Wash.2d 403, 416, 997 P.2d 915 (2000) (Sanders, J., dissenting).
[1] See also Double D Hop Ranch v. Sanchez, 133 Wash.2d 793, 799, 947 P.2d 727, 952 P.2d 590 (1997); Duke v. Boyd, 133 Wash.2d 80, 87, 942 P.2d 351 (1997); Price v. Kitsap Transit, 125 Wash.2d 456, 468, 886 P.2d 556 (1994); State v. Elgin, 118 Wash.2d 551, 555, 825 P.2d 314 (1992); State v. Schulze, 116 Wash.2d 154, 165, 804 P.2d 566 (1991); Am. Legion Post No. 32 v. City of Walla Walla, 116 Wash.2d 1, 9, 802 P.2d 784 (1991); State v. Leech, 114 Wash.2d 700, 708-09, 790 P.2d 160 (1990); Kirk v. Moe, 114 Wash.2d 550, 554, 789 P.2d 84 (1990); State v. Neher, 112 Wash.2d 347, 351, 771 P.2d 330 (1989); State v. Reece, 110 Wash.2d 766, 783, 757 P.2d 947 (1988); Mall, Inc. v. City of Seattle, 108 Wash.2d 369, 379, 739 P.2d 668 (1987); In re Det. of LaBelle, 107 Wash.2d 196, 205, 728 P.2d 138 (1986); Gen. Tel. Co. of N.W., Inc. v. Wash. Utils. & Transp. Comm'n, 104 Wash.2d 460, 471, 706 P.2d 625 (1985); Marine Power & Equip. Co. v. Indus. Indem. Co., 102 Wash.2d 457, 461, 687 P.2d 202 (1984); State v. Keller, 98 Wash.2d 725, 728, 657 P.2d 1384 (1983); State v. Day, 96 Wash.2d 646, 648, 638 P.2d 546 (1981); In re Pers. Restraint of Lehman, 93 Wash.2d 25, 27, 604 P.2d 948 (1980); Knappett v. Locke, 92 Wash.2d 643, 645, 600 P.2d 1257 (1979); State v. Burke, 92 Wash.2d 474, 478, 598 P.2d 395 (1979); State v. 1972 Dan J. Evans Campaign Comm., 86 Wash.2d 503, 508, 546 P.2d 75 (1976); Schwarz v. State, 85 Wash.2d 171, 174, 531 P.2d 1280 (1975); Blondheim v. State, 84 Wash.2d 874, 879, 529 P.2d 1096 (1975); Wash. State Dep't of Revenue v. Hoppe, 82 Wash.2d 549, 560, 512 P.2d 1094 (1973); In re Estates of Donnelly, 81 Wash.2d 430, 438, 502 P.2d 1163 (1972); Alderwood Water Dist. v. Pope & Talbot, Inc., 62 Wash.2d 319, 321, 382 P.2d 639 (1963); State v. Lake City Bowlers' Club, 26 Wash.2d 292, 295, 173 P.2d 783 (1946); Am. Prods. Co. v. Villwock, 7 Wash.2d 246, 271-72, 109 P.2d 570 (1941); Roberts v. State, 175 Wash. 154, 157, 26 P.2d 903 (1933); In re Estate of Tyler, 140 Wash. 679, 250 P. 456 (1926); Vizzaro v. King County, 130 Wash. 398, 403, 227 P. 497 (1924); In re Estate of Sherwood, 122 Wash. 648, 655-56, 211 P. 734 (1922); J.K. Lumber Co. v. Ash, 104 Wash. 388, 392, 176 P. 550 (1918); State v. Fabbri, 98 Wash. 207, 209, 167 P. 133 (1917); State v. Warburton, 97 Wash. 242, 247, 166 P. 615 (1917); Beach v. City of Seattle, 85 Wash. 379, 385, 148 P. 39 (1915); Reiff v. Armour & Co., 79 Wash. 48, 50, 139 P. 633 (1914); State ex rel. Sch. Dist. No. 25 v. Bd. of Comm'rs, 72 Wash. 454, 459, 130 P. 749 (1913); Boyd v. Pratt, 72 Wash. 306, 308, 130 P. 371 (1913); Dennis v. Moses, 18 Wash. 537, 559, 52 P. 333 (1898); Mason v. Purdy, 11 Wash. 591, 597-98, 40 P. 130 (1895); Pierce v. City Clerk, 7 Wash. 132, 136-37, 34 P. 428 (1893).