[No. 24778-3-III.   Division Three.   May 1, 2007.]

THE STATE OF WASHINGTON, *Respondent*, v. LOREN RONALD HANSON, *Appellant*.

*Patrick K. Stiley* and *Frank L. Cikutovich* (of *Stiley & Cikutovich*), for appellant.

*Denis P. Tracy, Prosecuting Attorney,* and *Byron Bedirian, Deputy,* for respondent.

¶1 SWEENEY, C.J. — This appeal follows a conviction for manufacturing marijuana. The defendant admits he grew the marijuana. He assigns error to the trial judge's refusal to admit his physician's authorization for the use of marijuana. And he assigns error to the judge's refusal to accept his affirmative defense that he used the drug for medical purposes within the requirements of the Washington State Medical Use of Marijuana Act (Medical Marijuana Act or Act), chapter 69.51A RCW. He obtained a formal written authorization to use marijuana the day after the police raided his motel but before they charged him. We conclude that the defendant satisfied the requirements of a qualifying patient under the Medical Marijuana Act. He presented the valid documentation necessary under the Act when required. We therefore reverse his conviction and dismiss the prosecution.

## FACTS

¶2 The police executed a search warrant on Loren Hanson's motel on August 24, 2004. He was not present. So no one could question him about whether he had the necessary authorization to use marijuana. Police seized 34 growing marijuana plants. The next day, Mr. Hanson obtained a valid authorization from his physician to use marijuana for medical purposes. The authorization is on an appropriate Washington State Medical Association form.

¶3 The State and Mr. Hanson submitted the case to the court on stipulated facts. Mr. Hanson stipulated that he knowingly manufactured marijuana. He argued, nonetheless, that he satisfied the requirements of the Medical Marijuana Act and moved to dismiss the prosecution based on that statutory affirmative defense. The State moved to exclude his physician's authorization because it came after the raid. The judge agreed that it came too late, and the authorization was not at the motel at the time of the raid. The judge, therefore, refused to admit the authorization.

¶4 The court then found Mr. Hanson guilty of manufacturing a controlled substance, marijuana.

## DISCUSSION

¶5 Mr. Hanson argues that he meets the definition of a qualifying patient—that requires no documentation. Next, he says that when prompted for his "valid documentation," he presented it. He says the statute requires no more.

¶6 The State responds that Mr. Hanson's authorization comes too late since it followed the seizure. And the authorization fails to satisfy the statutory requirements anyway since it does not show that the benefits and hazards of marijuana use were explained to Mr. Hanson.

¶7 The question presented is a question of law. Specifically, the issue is whether the trial judge's factual findings support his conclusion that Mr. Hanson failed to satisfy the requirements of the Medical Marijuana Act.

And, of course, we must interpret and apply the Act. Our review is then de novo. *State v. Shepherd*, 110 Wn. App. 544, 550, 41 P.3d 1235 (2002). And here no one suggests any ambiguity in the statutory scheme. So we apply the plain language of the Act. *State v. Hahn*, 83 Wn. App. 825, 832, 924 P.2d 392 (1996).

QUALIFYING PATIENT

¶8 Mr. Hanson says that he was a qualifying patient and that his status as a qualifying patient did not require documentation, valid or otherwise. To be a "qualifying patient" under the Medical Marijuana Act, Mr. Hanson must:

- be a patient of a licensed physician,
- have been diagnosed with a debilitating disease,
- be a resident of the state at the time of diagnosis,
- have been advised of the risks and benefits of the medical use of marijuana,
- and have been advised by his physician that he may benefit from its use.

RCW 69.51A.010(3).

■ ¶9 The authorization rejected by the trial court satisfies these requirements. And, moreover, the State did not challenge in the trial court and does not challenge here on appeal Mr. Hanson's status as a "qualifying patient." The State's objection and the trial court's decision rests on the fact that the authorization came the day after the raid. But by its clear language, to be a "qualifying patient" under the Medical Marijuana Act does not require the authorization form. Mr. Hanson only has to present the form when asked by the police. RCW 69.51A.040(2)(c).

QUALIFYING PATIENT'S AFFIRMATIVE DEFENSE

¶10 To establish the affirmative defense, Mr. Hanson must:

- be a qualifying patient,
- possess no more marijuana than necessary for his personal, medical use and not exceed a 60-day supply,

- and present his valid documentation *"to any law enforcement official who questions the patient regarding his or her medical use of marijuana."*

RCW 69.51A.040(2) (emphasis added).

¶11 Again, the only issue here is whether he satisfied this last requirement. Mr. Hanson went to the police station the day after this raid and presented the police with a valid authorization. That seems to be all the Medical Marijuana Act requires. The court's findings suggest that the authorization must be posted. Clerk's Papers at 20 (Finding of Fact 12). But we do not find that requirement in the statutes.

¶12 In *State v. Butler*, Division Two of this court held that "[i]n order to render [a defendant's] marijuana possession legal under the Act, [the defendant] needed to obtain and to possess . . . documentation from his personal physician in advance of law enforcement's questioning his medical use and possession." *State v. Butler,* 126 Wn. App. 741, 750-51, 109 P.3d 493 (2005) (emphasis omitted). And the statute requires that a qualifying patient shall "[p]resent his or her valid documentation to any law enforcement official who questions the patient regarding his or her medical use of marijuana." RCW 69.51A.040(2)(c). But again, we find nothing in the statute that requires that the documentation be posted or that the qualifying patient obtain the documentation in advance, although that is no doubt a preferable practice. Had Mr. Hanson been present on the day of this raid and had he been asked to present valid documentation, he would not have been able to do so and would not, then, have satisfied the requirements of the statute. But that did not happen here.

¶13 On this record, Mr. Hanson was questioned when he went to the police station the day after the raid. He went to the police voluntarily and provided valid documentation. That was the first day police "questioned" him regarding his medical marijuana use. He then satisfied the provisions of the Medical Marijuana Act. RCW 69.51A.040.

¶14 Mr. Hanson "obtain[ed] and . . . possess[ed] documentation from his personal physician in advance of law

enforcement's questioning his medical use and possession." *Butler*, 126 Wn. App. at 750-51.

## Marijuana—Schedule I Controlled Substance

¶15 Mr. Hanson also argues that the legal effect of the Medical Marijuana Act was to implicitly repeal a statutory classification of marijuana as a schedule I controlled substance. He asserts that this is because the classification requires a finding that the substance "has no currently accepted medical use in treatment" and "lacks accepted safety for use in treatment under medical supervision." RCW 69.50.203(a)(2), (3). And he argues that the Medical Marijuana Act reflects the implicit conclusion that marijuana has, or may have, some medical use.

¶16 The State urges a more limited view of the doctrine of repeal by implication. The State would require a clear and irreconcilable conflict in the two statutory schemes or some clear indication of legislative intent to repeal the classification of marijuana as a schedule I controlled substance.

¶17 We review a trial court's interpretation of statutes de novo. *Shepherd*, 110 Wn. App. at 550; *State v. Hurt*, 107 Wn. App. 816, 822, 27 P.3d 1276 (2001). Repeal by implication is strongly disfavored in Washington. *Amalgamated Transit Union Legislative Council of Wash. State v. State*, 145 Wn.2d 544, 552, 40 P.3d 656 (2002); *Tollycraft Yachts Corp. v. McCoy*, 122 Wn.2d 426, 439, 858 P.2d 503 (1993). "The legislature is presumed to be aware of its own enactments." *Amalgamated*, 145 Wn.2d at 552.

¶18 Repeal by implication can occur in two ways. *Id.* First, the subject matter of the subsequent legislation must cover the entire scope of the earlier one. *Id.* (quoting *Abel v. Diking & Drainage Improvement Dist. No. 4*, 19 Wn.2d 356, 363, 142 P.2d 1017 (1943)). Or second, the legislative acts can be so inconsistent that they cannot be reconciled to give effect to both. *Id.* (quoting *Abel*, 19 Wn.2d at 363).

¶19 Here, the subject matter of the Medical Marijuana Act does not cover the entire scope of chapter 69.50 RCW

(Uniform Controlled Substances Act), nor was it meant to. RCW 69.51A.005;[1] RCW 69.50.204(c)(14).[2] The purpose of the Medical Marijuana Act is to allow patients with terminal or debilitating illness to legally use marijuana when authorized by their physician. RCW 69.51A.005; *Shepherd,* 110 Wn. App. at 549.

¶20 A schedule I controlled substance is designated as such because either the State Board of Pharmacy has found that it "(1) has high potential for abuse; (2) has no currently accepted medical use in treatment in the United States; and (3) lacks accepted safety for use in treatment under medical supervision" or "the substance is controlled under schedule I of the federal Controlled Substances Act by a federal agency as the result of an international treaty, convention, or protocol." RCW 69.50.203.[3] Marijuana is listed as a schedule I controlled substance in RCW 69.50-.204(c)(14).

¶21 The legislature listed marijuana as a schedule I controlled substance as part of the Uniform Controlled Substances Act. Ch. 69.50 RCW; *Seeley v. State,* 132 Wn.2d 776, 784, 940 P.2d 604 (1997). The Uniform Controlled Substances Act then allows the board of pharmacy to

---

[1] RCW 69.51A.005 sets out the purpose and intent of the Medical Marijuana Act: some patients with terminal or debilitating medical problems may benefit from the medical use of marijuana if under their physician's care and supervision.

[2] RCW 69.50.204(c)(14) lists marijuana as a schedule I controlled substance.

[3]
    (a) The state board of pharmacy shall place a substance in Schedule I upon finding that the substance:
        (1) has high potential for abuse;
        (2) has no currently accepted medical use in treatment in the United States; and
        (3) lacks accepted safety for use in treatment under medical supervision.
    (b) The board may place a substance in Schedule I without making the findings required by subsection (a) of this section if the substance is controlled under Schedule I of the federal Controlled Substances Act by a federal agency as the result of an international treaty, convention, or protocol.
RCW 69.50.203.

change the designation based on a number of statutory factors:

(i) the actual or relative potential for abuse;

(ii) the scientific evidence of its pharmacological effect, if known;

(iii) the state of current scientific knowledge regarding the substance;

(iv) the history and current pattern of abuse;

(v) the scope, duration, and significance of abuse;

(vi) the risk to the public health;

(vii) the potential of the substance to produce psychic or physiological dependence liability; and

(viii) whether the substance is an immediate precursor of a controlled substance.

RCW 69.50.201(a)(1); *see Seeley*, 132 Wn.2d at 784.

¶22 No one has asked the pharmacy board to revisit the classification, and it has apparently not seen fit to do so. RCW 69.50.204(c)(14); *Seeley*, 132 Wn.2d at 784-85. The classification of marijuana as a schedule I controlled substance reflects a legislative choice, *State v. Martin*, 14 Wn. App. 717, 721-22, 544 P.2d 750 (1976), one that reflects a federal classification pursuant to an international treaty. 21 U.S.C. § 801a(2); RCW 69.50.203; *Martin*, 14 Wn. App. at 721. The decision to change the classification, then, is hardly a judicial decision. RCW 69.50.201; *Seeley*, 132 Wn.2d at 814.

¶23 Nor has the classification been repealed by implication since neither of the factors has been satisfied. First, the Medical Marijuana Act does not cover the entire scope of schedule I controlled substance designations, nor was it meant to. RCW 69.51A.005, .020; RCW 69.50.203, .204(c)(14). It simply provides that marijuana use "may" provide some relief for some diseases. RCW 69.51A.005. And therefore use is permitted if specific legislative procedures are followed.

¶24 Second, the Medical Marijuana Act only provides an affirmative defense to the drug crime. RCW 69.51A.040(1).

It is not, then, inconsistent with the schedule I classification. An affirmative defense does not negate the elements of a crime. It excuses the conduct. *State v. Ginn*, 128 Wn. App. 872, 878, 117 P.3d 1155 (2005).

¶25 Finally, on this point the legislative intent is clear: "[n]othing in this chapter shall be construed to supersede Washington state law prohibiting the acquisition, possession, manufacture, sale or use of marijuana for non-medical purposes." RCW 69.51A.020.

¶26 We do not read the Medical Marijuana Act and the Uniform Controlled Substances Act as inconsistent. Indeed, the Medical Marijuana Act never addresses whether marijuana has a currently accepted medical use. It only states that some patients *may* benefit from medical marijuana. RCW 69.51A.005.[4] It also states that it *may* be beneficial for certain conditions. *Id.* There has been no specific finding in the Medical Marijuana Act that marijuana *actually* benefits patients who suffer from certain conditions or that it is now safe for use in treatment. *See id.*

¶27 The Medical Marijuana Act recognizes that there are still inherent risks in using marijuana. It requires that patients be advised of these specific risks. RCW 69-.51A.010(3)(d). The Medical Marijuana Act and the Uniform Controlled Substances Act are easily read together. Ch. 69.51A RCW; RCW 69.50.203, .204(c)(14).

¶28 We will not read an affirmative defense (medical use) as inconsistent with the state's interest in regulating the use of the drug, particularly when the specific legislative intent is to the contrary. RCW 69.51A.020 states that the Medical Marijuana Act does not supersede Washington

---

[4] RCW 69.51A.005 states the purpose and intent of the Medical Marijuana Act. It states that some patients with terminal or debilitating medical problems may benefit from the medical use of marijuana if under their physician's care and supervision. "Some of the illnesses for which marijuana appears to be beneficial include chemotherapy-related nausea and vomiting in cancer patients; AIDS wasting syndrome; severe muscle spasms associated with multiple sclerosis and other spasticity disorders; epilepsy; acute or chronic glaucoma; and some forms of intractable pain." RCW 69.51A.005.

state law on the manufacture, sale, possession, or use of marijuana for nonmedical purposes.

¶29 Mr. Hanson argues that the rule of lenity requires that we read these statutory schemes in a way that implies that the one (the Medical Marijuana Act) repeals the earlier one (classification of marijuana as a schedule I controlled substance). Both statutes are clear. And we may not, therefore, engage in our own construction of the Medical Marijuana Act. *Hahn,* 83 Wn. App. at 832. The Medical Marijuana Act was never intended to supersede existing Washington law regarding marijuana use for nonmedical purposes. RCW 69.51A.020. And the classification of marijuana in Washington is based upon a federal classification pursuant to an international treaty. 21 U.S.C. § 801a(2).

¶30 Finally, "[t]he debate over the proper classification of marijuana belongs in the political arena." *Seeley,* 132 Wn.2d at 814. And the board of pharmacy, pursuant to its authority under RCW 69.50.201,[5] has seen fit to continue marijuana as a schedule I controlled substance. *Seeley,* 132 Wn.2d at 784-85.

¶31 We reverse the conviction and dismiss the prosecution.

KATO, J. PRO TEM., concurs.

¶32 BROWN, J. (dissenting) — While compassionate to persons possibly benefiting from the medical use of marijuana, I would hold the trial court did not err in ruling Loren Hanson's after-acquired medical authorization was legally insufficient to support the affirmative defense to this controlled substance manufacturing prosecution. The facts do not show Mr. Hanson was necessarily a "qualifying patient" as defined by RCW 69.51A.010(3) during the admitted material time, summer 2004 to August 24, 2004.

¶33 Mr. Hanson offered exhibit 1, dated August 25, 2004, in an attempt to establish the affirmative defense. We need

---

[5] Under RCW 69.50.201(a), the State Board of Pharmacy "may add substances to or delete or reschedule substances," including marijuana. In other words, it has the authority to change schedules of controlled substances. RCW 69.50.201.

not decide if exhibit 1 is "valid documentation" under RCW 69.51A.010(5), because it was produced after the fact. We do not know at what point, if any, during the material time his doctor may have assembled the pertinent medical records satisfying the requirements of RCW 69.51A.010(5)(a). Stipulations aside, considering his admitted use and the 34 plants found, this record is insufficient to show Mr. Hanson possessed no more marijuana than necessary for his personal medical use in any 60-day period during his manufacturing, as required in RCW 69.51A.040(2).

¶34 Even if exhibit 1 was germane to when the admitted manufacturing took place, I respectfully disagree with dismissing this case. The remedy would be to remand to allow a hearing after reversal, because the evidence is sufficient to support guilt before considering the affirmative defense. Accordingly, I dissent.