173 P.3d 323 (2007)
STATE of Washington, Respondent,
v.
Scott Vernon ATCHLEY, Appellant.
No. 25235-3-III.
Court of Appeals of Washington, Division 3.
December 18, 2007.
*326 Kevin Michael Korsmo, Attorney at Law, Andrew J. Metts III, Spokane County Pros Office, Spokane, WA, for Respondent.
Bevan Jerome Maxey, Maxey Law Offices PS, Spokane, WA, for Appellant.
KULIK, J.
¶ 1 Scott Vernon Atchley challenges his convictions for manufacturing a controlled substance, marijuana, and possession of a controlled substance with intent to deliver. The trial court did not err by refusing to: (1) compel the release of an informant's name, (2) hold a Franks[1] hearing on the allegedly false statements contained in the search warrant affidavit, or (3) suppress evidence derived from the search of his residence. Accordingly, we affirm.

FACTS
¶ 2 On July 26, 2005, Deputy Jack Rosenthal presented an affidavit for a search warrant for a suspected indoor marijuana grow operation at Mr. Atchley's residence. Deputy Rosenthal had been contacted by a concerned citizen informant, who provided the location of the residence and Mr. Atchley's name. The informant told the deputy that marijuana was being grown in Mr. Atchley's basement and that Mr. Atchley sold marijuana from this residence and at the Big Foot Tavern. In addition, the informant indicated that Mr. Atchley worked at a local home and garden store. The informant alleged that Mr. Atchley had devised an elaborate ventilation system and may have been diverting power from his residence to avoid detection of the marijuana grow operation by law enforcement.
*327 ¶ 3 Deputy Rosenthal obtained the informant's name, date of birth, address, place of employment, and phone number. Deputy Rosenthal completed a criminal background check of the informant, and found "no reason to believe that the [informant] would provide false information to law enforcement." Clerk's Papers (CP) at 25. The affidavit stated that the informant requested no compensation and that the information was not provided in connection with any past, present, or pending criminal charges.
¶ 4 Deputy Rosenthal followed up on the information provided by the informant and confirmed that Mr. Atchley owned and resided at the address provided. Deputy Rosenthal performed a Department of Licensing search and verified that Mr. Atchley was the owner of a 1988 GMC pickup. The deputy discovered that the vehicle was observed in 2002 at a local garden supply store where one year earlier law enforcement had conducted a surveillance operation, resulting in several arrests for marijuana cultivation and manufacturing. Deputy Rosenthal conducted a financial background check of Mr. Atchley, verifying that Mr. Atchley worked at Home Depot. Deputy Rosenthal stated in the affidavit that he believed Mr. Atchley was living beyond his reported financial means.
¶ 5 Deputy Rosenthal independently conducted a ruse, whereby he visited the outside of Mr. Atchley's residence undercover. Deputy Rosenthal stated that he did not detect the odor of marijuana. While outside the residence, Deputy Rosenthal noticed large quantities of potting soil dispersed around the home containing what "appeared to be" the root balls of marijuana plants. CP at 27. Deputy Rosenthal also stated he was able to see, through a partially open gate, that the backyard was covered in potting soil. Based on the deputy's training and experience, these observations were indicative of an indoor marijuana cultivation operation.
¶ 6 Based upon the information contained in the affidavit, a search warrant was issued for the person, residence, and vehicle of Mr. Atchley. Upon execution of the warrant, items were found in Mr. Atchley's residence, including marijuana plants, lights and other grow equipment, scales, packaging materials, and calendars.
¶ 7 In August 2005, Mr. Atchley was charged by information with one count of manufacturing a controlled substance, marijuana, and one count of possession of a controlled substance with intent to deliver.
¶ 8 Procedural History. Mr. Atchley brought motions to suppress evidence derived from the search of his home, to compel the release of the informant's name and to request a Franks hearing, and for dismissal of the charges against him. Mr. Atchley's suppression motion was based on his claims that the warrant was issued without sufficient probable cause and was based on false information. The trial court held a hearing concerning the validity of the search warrant. The court found probable cause for the warrant, declined a Franks hearing, and denied the motion to suppress.
¶ 9 Mr. Atchley filed a motion for reconsideration of his prior motions to suppress and dismiss. The trial court denied the motions. Mr. Atchley waived his right to a jury trial and elected to proceed with a stipulated facts trial. He was found guilty on both counts as charged in the information.
¶ 10 Mr. Atchley appeals the felony judgment and sentence entered on May 3, 2006, and specifically appeals all pretrial motions heard in the case.

ANALYSIS
¶ 11 Standard of Review. The trial court's findings of fact are reviewed under a clearly erroneous standard, and will be reversed only if not supported by substantial evidence. State v. Grewe, 117 Wash.2d 211, 218, 813 P.2d 1238 (1991). Substantial evidence exists only if there is a sufficient quantity of evidence in the record to persuade a fair-minded, rational person of the truth of the finding. State v. Hill, 123 Wash.2d 641, 644, 870 P.2d 313 (1994) (citing State v. Halstien, 122 Wash.2d 109, 129, 857 P.2d 270 (1993)). Great deference is given to the trial court's factual findings. State v. Cord, 103 Wash.2d 361, 367, 693 P.2d 81 (1985). Conversely, this court reviews challenges to the trial court's conclusions of law de novo. Robel *328 v. Roundup Corp., 148 Wash.2d 35, 43, 59 P.3d 611 (2002).
¶ 12 Release of the Informant's Name. Mr. Atchley first contends the trial court erred by denying his motion to compel the identity of the confidential citizen informant who provided information to Deputy Rosenthal.
¶ 13 It is well established that the State has a legitimate interest in protecting the identity of confidential informants. See State v. Moen, 150 Wash.2d 221, 230, 76 P.3d 721 (2003). The ability to protect an informant's identity from disclosure is termed the "informers' privilege," which is the government's privilege to withhold from disclosure the identity of persons who provide information to law enforcement concerning the commission of crimes. State v. Harris, 91 Wash.2d 145, 148, 588 P.2d 720 (1978).
¶ 14 This privilege is recognized in Washington both by statute, RCW 5.60.060(5), and court rule, CrR 4.7(f)(2). Specifically, CrR 4.7(f)(2), concerning matters not subject to disclosure in criminal cases, states:
Disclosure of an informant's identity shall not be required where the informant's identity is a prosecution secret and a failure to disclose will not infringe upon the constitutional rights of the defendant. Disclosure of the identity of witnesses to be produced at a hearing or trial shall not be denied.
¶ 15 The purpose of informer's privilege is to encourage citizens to aid law enforcement by protecting the source of the communication. See State v. Casal, 103 Wash.2d 812, 815-16, 699 P.2d 1234 (1985); Harris, 91 Wash.2d at 148, 588 P.2d 720. The Washington Supreme Court explained that "[w]hen the State is compelled to disclose an informant's identity, it loses a valuable asset or tool of law enforcement." Moen, 150 Wash.2d at 230, 76 P.3d 721.
¶ 16 In Roviaro v. United States, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957), the United States Supreme Court acknowledged the need to balance the interests of the accused in criminal discovery and the interests in protecting the identity of a confidential informant. The Court specifically addressed the government's obligation to reveal the identity of an informant not called as a witness in the case.
¶ 17 Importantly, in Roviaro the court held
no fixed rule with respect to disclosure is justifiable. The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors.
Id. at 62, 77 S.Ct. 623. If, after considering these factors, the court determines that the disclosure of an informant's identity or the contents of the communication are "relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause," the court may require disclosure. Id. at 60-61, 77 S.Ct. 623.
¶ 18 Washington courts have held that, where the informant provided information relating only to probable cause rather than the defendant's guilt or innocence, disclosure of the identity of an informant is not required. Casal, 103 Wash.2d at 816, 699 P.2d 1234 (citing State v. Larson, 26 Wash.App. 564, 567-68, 613 P.2d 542 (1980); State v. Sewell, 11 Wash.App. 546, 548, 524 P.2d 455 (1974); State v. White, 10 Wash.App. 273, 518 P.2d 245 (1973)).
¶ 19 Here, nothing in the record indicates that the citizen informant provided false information to Deputy Rosenthal or that the citizen informant was acting out of revenge or self-interest. The informant received no compensation or reward for the information. Further, the affidavit indicated that, after running a criminal background check, there was no reason to believe the informant would provide false information. The affidavit was signed under oath by Deputy Rosenthal.
¶ 20 Furthermore, Mr. Atchley does not challenge the existence of the informant or contend that the deputy misrepresented the *329 informant's statements or information. The identity of an informant is generally considered relevant and helpful to the accused's defense or essential to a fair determination in cases when the informant set up the commission of the crime, participated in the crime, or was present at its occurrence. Roviaro, 353 U.S. at 61-62, 77 S.Ct. 623. Such facts are not present in this case. Additionally, the informant did not appear to be a potential witness or provide testimony. The informant provided information relating only to probable cause, not the issue of Mr. Atchley's guilt or innocence. And the informant's tip was not the sole basis for probable cause to issue the search warrant.
¶ 21 In conclusion, Mr. Atchley's contention that he was unable to properly argue the propriety of the search warrant on the basis that he lacked the informant's name is without merit. Accordingly, the trial court did not err by denying Mr. Atchley's motion to compel the identity of the confidential citizen informant.
¶ 22 Franks Hearing. Mr. Atchley next argues that the trial court erred by denying his motion for a hearing under the United States Supreme Court decision in Franks v. Delaware, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). He alleges that the affidavit omitted material facts and contained misleading or untrue facts.
¶ 23 In Franks, the Court addressed at length the issue of whether a false statement by a government affiant made in the affidavit invalidates a search warrant. Id. at 167-72, 98 S.Ct. 2674. We begin with the presumption that the affidavit supporting a search warrant is valid. Id. at 171, 98 S.Ct. 2674. Under Franks, in limited circumstances, a criminal defendant is entitled to challenge the truthfulness of factual statements made in an affidavit supporting a search warrant during a special evidentiary hearing. Id. at 155-56, 98 S.Ct. 2674. As a threshold matter, the defendant must first make a "substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause." Id.
¶ 24 Specifically, the defendant's allegations must be accompanied by an offer of proof, indicating the portion of the warrant affidavit at issue, and the offer of proof should include relevant statements of witnesses and reasons supporting the claims. Id. at 171, 98 S.Ct. 2674. Assertions of mere negligence or innocent mistake are insufficient. Id. Rather, the defendant must allege deliberate falsehood or reckless disregard for the truth. Id.
¶ 25 Importantly, the Franks test for material representations has been extended to material omissions of fact. Cord, 103 Wash.2d at 367, 693 P.2d 81. In examining whether an omission rises to the level of a misrepresentation, the proper inquiry is not whether the information tended to negate probable cause or was potentially relevant, but, rather, the court must find the challenged information was necessary to the finding of probable cause. State v. Garrison, 118 Wash.2d 870, 874, 827 P.2d 1388 (1992).
¶ 26 If the defendant succeeds in showing a deliberate or reckless omission, then the omitted material is considered part of the affidavit. Id. at 873, 827 P.2d 1388. "If the affidavit with the matter deleted or inserted, as appropriate, remains sufficient to support a finding of probable cause, the suppression motion fails and no hearing is required." Id.
¶ 27 Here, Mr. Atchley had the burden of making a substantial preliminary showing that Deputy Rosenthal intentionally or recklessly included a false statement in the affidavit for the search warrant. Mr. Atchley's challenge falls short of what is required under Franks.
¶ 28 In his offer of proof, Mr. Atchley presented numerous photographs in support of his argument that root balls were not visible in the soil and that Deputy Rosenthal could not have seen into the backyard. The trial court made a finding of fact that there was "nothing on the face of the photographs that would indicate the deputy is lying or that would rebut what the deputy stated in *330 his affidavit." CP at 52. The court's finding of fact is supported by substantial evidence.
¶ 29 Mr. Atchley also provided declarations supporting his argument that the backyard gate was never left open. Mr. Atchley argues that Deputy Rosenthal lied in his affidavit by purporting to observe things in the yard which he could not have possibly seen. However, testimony provided by Mr. Atchley himself indicated the gate was at times propped open with a rock. Further, Deputy Rosenthal had no motivation to make a false statement as to whether the gate was open because the affidavit makes no mention of observing marijuana, root balls, or any illegal activity in the backyard.
¶ 30 Mr. Atchley focuses extensively on the fact that Deputy Rosenthal did not affirmatively identify the root balls as being marijuana root balls when Deputy Rosenthal stated in the affidavit:
Your Affiant noticed that from the street he could see more potting soil around the east side of the home. In that potting soil he noticed what appeared to be root balls that were mixed into the potting soil. These root balls had stems which were cut off approximately two to three inches above the root system. Your Affiant has collected and counted thousands of marijuana plants and has examined the root ball systems of those plants. The root balls seen beside the suspect residence appeared to be consistent with root balls and stems seized by your affiant in numerous previous marijuana cultivation operations.
CP at 27 (emphasis added).
¶ 31 Mr. Atchley's counsel, in his motion for reconsideration, refers to a conversation he had with Deputy Rosenthal concerning the above language of the affidavit. Deputy Rosenthal allegedly said: "you notice I didn't say these were marijuana root ballsthey appeared to be consistent with marijuana root balls." CP at 61. Mr. Atchley characterizes this as an admission by Deputy Rosenthal that the statement in the affidavit was "knowingly misleading on his part and essentially constituted a game of semantics with the court." Brief of Appellant at 16. Without the context in which the statement was made, this is simply an unsupported characterization and is not sufficient evidence that the deputy admitted to perjury.
¶ 32 Further, Mr. Atchley argues that Deputy Rosenthal omitted certain material facts from the affidavit for the search warrant. These relevant omissions include information: (1) that the records from Avista Power and Light Company did not produce any corroborating evidence that the power usage was above normal or that Mr. Atchley diverted power from another source; (2) on how Mr. Atchley financed the subject residence and another property, and information supporting Deputy Rosenthal's qualifications for making such a determination that Mr. Atchley was living beyond his reported financial means; (3) that the sighting of Mr. Atchley's truck at the garden supply store under surveillance never resulted in any further investigation, nor was there information of any previous arrests in connection with marijuana cultivation operations; (4) that Deputy Rosenthal never conducted a criminal background check on Mr. Atchley; (5) that Deputy Rosenthal was given no information that the informant had ever been inside the Atchley residence or that the informant's tip was based on firsthand information; and (6) that Deputy Rosenthal had no corroborating evidence that Mr. Atchley sold marijuana from the Big Foot Tavern as the informant claimed.
¶ 33 Again, Mr. Atchley must first make a showing that Deputy Rosenthal, knowingly and intentionally, or with reckless disregard for the truth, omitted this information from the affidavit. Mr. Atchley has not done so. Even assuming that the omissions were intentional or reckless, the affidavit would have established probable cause if the omitted information had been included. No Franks hearing was required on the basis of omitted information.
¶ 34 The photographs, testimony, and declarations presented by Mr. Atchley were insufficient offers of proof to satisfy the preliminary showing requirement. No evidence supports Mr. Atchley's argument that Deputy Rosenthal's statements or omissions were misrepresentations or were made knowingly *331 and intentionally, or with reckless disregard for the truth. Because the trial court's findings of fact are supported by substantial evidence, the court was not required to provide Mr. Atchley with an evidentiary hearing under Franks.
¶ 35 Probable Cause. Mr. Atchley asserts there was no probable cause to support the issuance of the search warrant and, therefore, the evidence obtained from the search should be suppressed.
¶ 36 A search warrant may issue only upon a determination of probable cause. State v. Cole, 128 Wash.2d 262, 286, 906 P.2d 925 (1995). Probable cause exists where there are facts and circumstances sufficient to establish a reasonable inference that the defendant is involved in criminal activity and that evidence of the criminal activity can be found at the place to be searched. State v. Thein, 138 Wash.2d 133, 140, 977 P.2d 582 (1999).
¶ 37 To establish probable cause, the affidavit for a search warrant "must set forth sufficient facts to lead a reasonable person to conclude there is a probability that the defendant is involved in criminal activity." Cord, 103 Wash.2d at 365-66, 693 P.2d 81. Probable cause requires only a probability of criminal activity, not a prima facie showing. State v. Maddox, 152 Wash.2d 499, 505, 98 P.3d 1199 (2004). In determining probable cause, the magistrate makes a practical, commonsense decision, and is entitled to draw reasonable inferences from all the facts and circumstances set forth in the affidavit. Id.
¶ 38 A magistrate's determination of probable cause is reviewed for abuse of discretion, and the determination is accorded great deference by the reviewing court. Cole, 128 Wash.2d at 286, 906 P.2d 925. Doubts are to be resolved in favor of the warrant's validity. State v. Kalakosky, 121 Wash.2d 525, 531, 852 P.2d 1064 (1993).
¶ 39 When evaluating the existence of probable cause where information was provided by an informant, Washington applies the Aguilar-Spinelli[2] two-pronged test. State v. Jackson, 102 Wash.2d 432, 435, 688 P.2d 136 (1984). The two prongs consist of the "veracity" or the credibility of the informant, and the informant's "basis of knowledge." Id. The prongs are independent and both must be established in the affidavit. Id. at 437, 688 P.2d 136.
¶ 40 In Jackson, the court held
[f]or an informant's tip (as detailed in an affidavit) to create probable cause for a search warrant to issue: (1) the officer's affidavit must set forth some of the underlying circumstances from which the informant drew his conclusion so that a magistrate can independently evaluate the reliability of the manner in which the informant acquired his information; and (2) the affidavit must set forth some of the underlying circumstances from which the officer concluded that the informant was credible or his information reliable.
Id. at 435, 688 P.2d 136 (citing Aguilar v. Texas, 378 U.S. 108, 114, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964); Spinelli v. United States, 393 U.S. 410, 413, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969)).
¶ 41 The credibility of a confidential informant depends on whether the informant is a private citizen or a professional informant, and, if a citizen informant, whether his or her identity is known to the police. State v. Ibarra, 61 Wash.App. 695, 699, 812 P.2d 114 (1991). When the identity of an informant is known, the necessary showing of reliability is relaxed, as the information is less likely to be given in self-interest. State v. Gaddy, 152 Wash.2d 64, 72-73, 93 P.3d 872 (2004).
¶ 42 However, Washington requires a heightened showing of credibility for citizen informants whose identity is known to police but not disclosed to the magistrate. Ibarra, 61 Wash.App. at 700, 812 P.2d 114. To address *332 concerns that the confidential citizen informant is not an "anonymous troublemaker," the affidavit must contain "background facts to support a reasonable inference that the information is credible and without motive to falsify." Cole, 128 Wash.2d at 287-88, 906 P.2d 925.
¶ 43 Here, there was sufficient evidence that the credibility of the informant was established. The informant provided his or her name and other contact information to police. The informant received no compensation or other reward in return for the tip. A background check revealed nothing to give Deputy Rosenthal reason to suspect the information provided was false. The informant said his or her reason for coming forward was to assist law enforcement in ridding the community of suspected narcotic manufacturers and traffickers.
¶ 44 The remaining issue under Aguilar-Spinelli is whether the affidavit established the confidential informant's basis of knowledge. In order to satisfy this second prong, the affiant "must explain how the informant claims to have come by the information" and "the informant must declare that he personally has seen the facts asserted and is passing on firsthand information." Jackson, 102 Wash.2d at 437, 688 P.2d 136.
¶ 45 The State concedes that this prong is weak or absent. Here, Deputy Rosenthal did not provide any information in the affidavit establishing that the informant's tip was based on firsthand knowledge or indicating that the informant had been inside Mr. Atchley's residence. However, Deputy Rosenthal testified he knew how the informant obtained the information, but he did not include this in the affidavit because it could inadvertently identify the informant.
¶ 46 In this case, whether the information provided by the informant, standing alone, provides probable cause sufficient to support the issuance of a search warrant need not be addressed because the informant's statements were not the sole basis for supporting the affidavit. The affidavit contained information provided by the informant as well as significant additional information provided by Deputy Rosenthal.
¶ 47 Importantly, "if the informant's tip fails under either or both of the two prongs of Aguilar-Spinelli, probable cause may yet be established by independent police investigatory work that corroborates the tip to such an extent that it supports the missing elements of the Aguilar-Spinelli test." Jackson, 102 Wash.2d at 438, 688 P.2d 136. The police investigation must corroborate the informant's suggestions of criminal activity, and not merely verify innocuous details, commonly known or public facts, or predictable events. Id.
¶ 48 The affidavit shows that Deputy Rosenthal conducted independent research and made independent observations. Deputy Rosenthal conducted an investigation into the informant's report by verifying information provided about Mr. Atchley and also conducted a ruse at Mr. Atchley's residence where the marijuana grow operation was suspected. The affidavit recited the deputy's personal observations of suspected marijuana root balls on Mr. Atchley's premises, facts relating to Mr. Atchley's vehicle being sighted at a gardening supply store known to be used in marijuana cultivation operations, and the deputy's statement that he believed Mr. Atchley was living beyond his reported financial means. Further, the affidavit set forth facts that the affiant, Deputy Rosenthal, had training and experience to identify marijuana.
¶ 49 This information provided in the affidavit was sufficient to establish probable cause that Mr. Atchley was involved in criminal activity and that further evidence of the grow operation could be found at his residence. Based on the record, the search warrant was supported by probable cause and was lawfully issued.
¶ 50 Marijuana  Schedule I Controlled Substance. Finally, Mr. Atchley argues that his conviction cannot stand because marijuana is no longer a schedule I controlled substance. In Hanson, decided by this court in May 2007, the appellant challenged his conviction for manufacturing marijuana. State v. Hanson, 138 Wash.App. 322, 324, 157 P.3d 438 (2007). The primary issue was whether the defendant had available the statutory *333 affirmative defense that he used marijuana for medical purposes, where he obtained written authorization to use the marijuana from his physician after the police had seized the marijuana plants, but before he was charged. Id. Significant to the present case, on appeal Mr. Hanson argued that the legal effect of the Washington State Medical Use of Marijuana Act (Medical Marijuana Act) was to implicitly repeal the classification of marijuana as a schedule I controlled substance. Id. at 328, 157 P.3d 438. As to that contention, this court did not agree.
¶ 51 RCW 69.50.204(c)(14) lists marijuana as a schedule I controlled substance. The legislature has designated marijuana as a schedule I controlled substance as part of the uniform controlled substances act. Hanson, 138 Wash.App. at 329, 157 P.3d 438 (citing ch. 69.50 RCW). Under the uniform controlled substances act, the board of pharmacy may change the designation, but as of the decision in Hanson, "[n]o one has asked the pharmacy board to revisit the classification and it has apparently not seen fit to do so." Id. at 330, 157 P.3d 438. Further, this court noted that the marijuana classification as a schedule I controlled substance reflected a federal classification, pursuant to an international treaty. Id. at 330, 157 P.3d 438 (citing 21 U.S.C. § 801a(2); RCW 69.50.203; State v. Martin, 14 Wash.App. 717, 721, 544 P.2d 750 (1976)).
¶ 52 Importantly, this court in Hanson examined legislative intent, specifically finding that the Medical Marijuana Act does not supersede existing Washington state law prohibiting the manufacture, sale, possession, acquisition or use of marijuana for non-medical purposes. Id. at 331, 157 P.3d 438 (quoting RCW 69.51A.020).
¶ 53 Based on the court's holding in Hanson, Mr. Atchley's argument that RCW 69.50.204(c)(14) has been repealed by the enactment of chapter 69.51A RCW is without merit.
¶ 54 We affirm.
WE CONCUR: BROWN and STEPHENS, JJ.
NOTES
[1] Franks v. Delaware, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978).
[2] Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964); Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), abrogated by Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), but adhered to by State v. Jackson, 102 Wash.2d 432, 688 P.2d 136 (1984).