IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 34651-0-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DUSTIN JAMES EGUIRES, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

SIDDOWAY, J. — We are presented with a two-tiered claim of ineffective assistance of counsel. After Dustin Eguires accepted a plea offer and his guilty plea was accepted, attorney David Mason substituted in as counsel and filed a CrR 4.2 motion for leave to withdraw the plea. He argued that Mr. Eguires's original lawyer, Theodore Heilman-Schott, provided ineffective assistance of counsel by allowing Mr. Eguires to plead guilty despite having a viable basis for suppressing the State's most important evidence.

Mr. Mason's argument failed, and Mr. Eguires argues on appeal that if the trial court correctly found that Mr. Mason's showing was insufficient, then Mr. Mason provided ineffective assistance of counsel by failing to submit competent evidence and clear legal argument.

The trial court correctly found Mr. Mason's showing to be insufficient. And because the additional evidence Mr. Eguires presents on appeal does not demonstrate that Mr. Heilman-Schott overlooked a basis for suppressing key evidence that was likely to succeed, Mr. Eguires is not entitled to the reversal of the trial court's order denying his CrR 4.2 motion. We affirm.

FACTS AND PROCEDURAL BACKGROUND

On a fall morning in 2015, three officers from the Yakima County Sheriff's Office and an unidentified number of officers from the Yakama Nation Police Department (hereafter sometimes "YNPD") responded to White Swan High School after Dustin Eguires was seen on high school property with a rifle. He was observed removing the rifle from the back of a white truck and placing it into a waiting blue two-door vehicle. The high school was placed in lockdown.

Officers responding from the county sheriff's office were Deputy Brian McIlrath, Deputy Reyna, and Sergeant Splawn.[1] By the time they arrived at the high school, Yakama Nation officers had located the white truck, which belonged to Mr. Eguires, and were talking to two individuals. According to a statement later provided by Sergeant Splawn, a short time after arriving at the school, sheriff's officers

---

[1] Our record provides only the last names of Deputy Reyna and Sergeant Splawn.

2

> were notified that a YNPD officer had spotted the blue car at Dustin's house. Dustin and a second male were seen to the rear of the house. Dustin appeared to be armed with a rifle.

Clerk's Papers (CP) at 75. In response to this information, the sheriff's deputies went to Mr. Eguires's home, where Mr. Eguires and another man were found looking through a duffel bag outside a minivan. Both were handcuffed and put in patrol cars.

Deputy McIlrath read Mr. Eguires *Miranda*[2] warnings, spoke with him, and made a telephonic application for a search warrant to enter the buildings and vehicles located at the address to search for the rifle. The search warrant was granted, the search was conducted, and the rifle was found.

In the course of the search, the sheriff's deputies saw multiple pieces of identification in the open duffel bag. Deputy McIlrath called the judge who had issued the warrant, asking that it be amended to expand the scope of the search. The judge granted the requested amendment. The duffel bag turned out to contain many pieces of government-issued identification, tax records, and a check, all belonging to other individuals. Mr. Eguires was eventually charged with 12 counts of second degree identity theft in violation of RCW 9.35.020(3) and (1), and 1 count of carrying a firearm onto public school property in violation of RCW 9.41.280(1).

---

[2] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

No. 34651-0-III
*State v. Eguires*

Mr. Eguires thereafter reached a plea agreement under which he would enter an *Alford*[3] plea to the counts charged in this action, in exchange for which the State would recommend an exceptional downward sentence of only 18 months and would dismiss two other criminal cases pending against Mr. Eguires. With an offender score of 9+ in light of the more than one dozen charges against him, the standard ranges Mr. Eguires faced were 43 to 57 months for each of the identity theft counts and 364 days for the firearm charge. A hearing was held at which Mr. Eguires, represented by Mr. Heilman-Schott, acknowledged his understanding of the plea agreement. The trial court accepted the plea.

Before sentencing, a second lawyer, Mr. Mason, appeared for Mr. Eguires and filed a "Motion to Withdraw Plea *Franks v. Delaware*,[4] *Strickland v. Washington*."[5] CP at 20. Attached to the motion was a copy of the original search warrant for Mr. Eguires's premises; a narrative and one page of an incident report, both completed by Deputy McIlrath; and excerpts of a CAD[6] record of dispatch communications on the morning Mr. Eguires was located and his premises were searched. The motion argued that there were "disturbing" inconsistencies in the attached records that raised "a number of *Franks* issues" on the basis of which a motion to suppress the evidence against Mr. Eguires

---

[3] *North Carolina v. Alford*, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970).
[4] 438 U.S. 154, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978).
[5] 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).
[6] Computer-aided dispatch.

4

might succeed. CP at 20, 21. Given these "*Franks* issues," the motion asked that Mr. Eguires be allowed to withdraw his guilty plea and proceed with discovery.

In supplemental briefing, Mr. Mason represented that he had listened to the recording of Deputy McIlrath's telephonic affidavit in support of the search warrant. Characterizing himself as an officer of the court, Mr. Mason represented that "the deputy told the court the following:"

> I arrived with two other deputies [and] we placed Dustin into custody
> After Miranda, he told me that he had a rifle
> He set it somewhere on the property
> He did not tell me where
> I'm requesting permission to go onto his property to retrieve the rifle

CP at 31 (alteration in original). He argued that the CAD and other records suggested officers had seen Mr. Eguires's rifle upon first arriving at the home, Deputy McIlrath knew where it was, and the deputies never needed a search warrant. He argued that Mr. Heilman-Schott's failure to "discover, disclose and discuss" a promising suppression issue with his client before Mr. Eguires entered his plea "raises significant effective assistance issues." CP at 33.

The State responded that for Mr. Eguires to establish ineffective assistance of counsel, he would need to demonstrate that if a motion for a *Franks* hearing had been made, the trial court would likely have granted it, found the application for the warrant to be materially inaccurate, and found that an accurate application would not have demonstrated probable cause. It argued that the showing had not been made. At a

5

hearing on the motion to withdraw the guilty plea, the trial court agreed, observing that it

had no affidavit from Mr. Eguires and no transcript of Deputy McIlrath's telephonic

affidavit in support of the search warrant. It explained:

> I can't—I don't have enough information to make a—a reasoned analysis and say, I think you would have won. I can't say that the results from Mr. Eguires today would have been any different, because I don't know who would have won. You have raised some questions, but that's the extent of it.

Report of Proceedings (RP) at 63.

Mr. Eguires's CrR 4.2 motion was denied. At sentencing that took place the

following week, the trial court accepted the State's recommendation and sentenced Mr.

Eguires to a total period of confinement of 18 months. Mr. Eguires appeals.

ANALYSIS

Mr. Eguires assigns error to the trial court's refusal to accept Mr. Mason's offer of

proof as establishing a manifest injustice supporting withdrawal of a defendant's plea.

Alternatively, if the trial court correctly required *evidence* of a manifest injustice, Mr.

Eguires argues that Mr. Mason provided ineffective assistance of counsel by failing to

prepare and offer evidence.

CrR 4.2(f) provides that the court shall allow a defendant to withdraw his plea of

guilty whenever it appears that the withdrawal is necessary to correct a manifest injustice.

A manifest injustice is an injustice that is "obvious, directly observable, overt, not

obscure." *State v. Taylor*, 83 Wn.2d 594, 596, 521 P.2d 699 (1974). Four nonexclusive

6

circumstances have been identified as demonstrating a manifest injustice: (1) a denial of effective counsel, (2) a plea that is not ratified by the defendant or someone authorized by the defendant to do so, (3) an involuntary plea, or (4) a plea agreement that is not honored by the prosecution. *State v. Wakefield*, 130 Wn.2d 464, 472, 925 P.2d 183 (1996).

We review a trial court's decision on a motion to withdraw a guilty plea for abuse of discretion. *State v. A.N.J.*, 168 Wn.2d 91, 106, 225 P.3d 956 (2010). A trial court abuses its discretion if its decision is manifestly unreasonable, is based on untenable grounds, or is made for untenable reasons. *In re Det. of Duncan*, 167 Wn.2d 398, 402, 219 P.3d 666 (2009).

I.    THE TRIAL COURT DID NOT ERR BY DENYING THE MOTION ON THE BASIS OF MR. EGUIRES'S FAILURE TO PRESENT EVIDENCE

In support of his first assignment of error, Mr. Eguires argues the trial court erroneously applied an affidavit requirement that he contends applies when a *postjudgment* motion to withdraw a plea is made under CrR 7.8 but does not apply when a *prejudgment* motion is made, as in his case. To demonstrate these allegedly differing requirements, he points to the fact that CrR 7.8(c)(1) requires that a motion "shall be . . . supported by affidavits setting forth a concise statement of the facts or errors upon which the motion is based," while CrR 4.2(f) says nothing about affidavits. CrR 7.8(c)(1) applies to every sort of postjudgment motion for relief from a judgment, however. That

alone explains a need for an affidavit identifying which of myriad bases for such a motion is being presented.

CrR 4.2(f), which deals only with a request to withdraw a plea, requires that a manifest injustice must be apparent to the court. It is well settled that the defendant bears the burden of proving the existence of a manifest injustice. *State v. Quy Dinh Nguyen*, 179 Wn. App. 271, 283, 319 P.3d 53 (2013). "Because CrR 4.2 provides extensive safeguards for defendants in entering pleas, our Supreme Court describes the standard on a motion to withdraw as 'demanding.'" *Id.* at 283 (quoting *Taylor*, 83 Wn.2d at 596).

Facts, such as the existence of a manifest injustice, must be proved by evidence. An offer of proof is not evidence. An offer of proof is a method for establishing a record where the trial court *excludes* evidence. ER 103(a)(2). Such an offer is often needed if a party wishes to be able to argue on appeal that an exclusion of evidence was erroneous and not harmless. In *Franks*, the defendant was allowed to make only this sort of offer of proof in the trial court, because courts had not yet recognized any right to challenge the truthfulness of factual statements made in an affidavit supporting a search warrant. *See Franks v. Delaware*, 438 U.S. 154, 155, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978). At a suppression hearing, Mr. Franks was prepared to call three witnesses and sought to call two others in an effort to prove that the warrant application had been untruthful. *Id.* at 158. He was denied the opportunity to present the evidence because the court agreed

with the State that then-controlling law limited any challenge to a search warrant to its facial sufficiency. *Id.* at 158-60.

In holding for the first time in *Franks* that the application for a search warrant can be challenged in limited circumstances, the Supreme Court adopted a two-step process for such a challenge. In the first step, a defendant must make a substantial preliminary showing including "allegations of deliberate falsehood or of reckless disregard for the truth . . . accompanied by an offer of proof." *Id*. at 171. This first-step "offer of proof" required to receive a *Franks* hearing should generally include evidence. The challenger's attack "must be more than conclusory and must be supported by more than a mere desire to cross examine." *Id*. "Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained." *Id.*

Mr. Mason characterized his offer of proof as a representation of fact made as a member of the bar and an officer of the court. Given a lawyer's duty of candor to the court, *see* RPC 3.3(a), the court may accept such a representation. The Rules of Professional Conduct only prohibit a lawyer from "knowingly" misrepresenting matters to the court, however, *see id.*, thereby recognizing that even a compliant lawyer may unwittingly make a misrepresentation. And regrettably, not all officers of the court always uphold their professional obligations. Courts are not required to accept a lawyer's representations to the court. *State v. Israel*, 19 Wn. App. 773, 577 P.2d 631 (1978).

9

The trial court reasonably treated Mr. Mason's showing as insufficient in light of his failure to provide a transcript of Deputy McIlrath's telephonic affidavit. We now know—because the parties obtained a transcript for purposes of the appeal—that a transcript of the call consumes over five pages. Mr. Mason's offer of proof briefly paraphrased only five of Deputy McIlrath's statements to the judge. It omitted others that were equally important. The trial court did not err in determining that Mr. Eguires was required to present the pertinent evidence, not just a conclusory attack and request for discovery.

II. MR. EGUIRES FAILS TO DEMONSTRATE PREJUDICE FROM THE ALLEGEDLY INEFFECTIVE ASSISTANCE OF MR. MASON

Effective assistance of counsel is guaranteed by both the Sixth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution. *Strickland v. Washington*, 466 U.S. 668, 686, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); *State v. Mierz*, 127 Wn.2d 460, 471, 901 P.2d 286 (1995). To demonstrate ineffective assistance of counsel, a defendant must show two things: "(1) defense counsel's representation was deficient, i.e., it fell below an objective standard of reasonableness based on consideration of all the circumstances; and (2) defense counsel's deficient representation prejudiced the defendant, i.e., there is a reasonable probability that, except for counsel's unprofessional errors, the result of the proceeding would have been

10

different." *State v. McFarland*, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995) (emphasis omitted).

Mr. Eguires fails to demonstrate prejudice: that had it not been for Mr. Mason's unprofessional errors, there is a reasonable probability the court would have granted Mr. Eguires's motion to withdraw his plea. For Mr. Mason's motion to succeed, he needed to demonstrate Mr. Heilman-Schott's ineffective assistance as counsel, and therefore, as the trial court pointed out, that there was a "huge and significant" *Franks*-type suppression issue that, because Mr. Heilman-Schott ignored it, presented a manifest injustice. RP at 63. To prevail on appeal, Mr. Eguires needs to point to the evidence that demonstrates this huge and significant *Franks*-type suppression issue that Mr. Heilman-Schott allegedly ignored.

We begin with the presumption that the affidavit supporting a search warrant is valid. *State v. Atchley*, 142 Wn. App. 147, 157, 173 P.3d 323 (2007) (citing *Franks*, 438 U.S. at 171). We have already identified the evidence-based character of the offer of proof that must be made in order to be entitled to a *Franks* hearing challenging the truthfulness and material completeness of the facts stated in the warrant affidavit. *Id.* at 157-58. The substantial preliminary showing a defendant must make is of a false statement or material omission that was made by the affiant "'knowingly and intentionally, or with reckless disregard for the truth.'" *Id.* at 155-56 (quoting *Franks*, 438 U.S. at 154). The offer of proof by the defendant must (1) point out specifically the

11

portion of the warrant affidavit that is claimed to be false, (2) furnish testimony demonstrating that the affiant misled the magistrate deliberately or recklessly (or explain the absence of evidence), and (3) demonstrate that the challenged falsehood was necessary to the finding of probable cause. *Franks*, 438 U.S. at 171-72.

*Atchley* illustrates the high bar before evidence is sufficient to demonstrate a warrant affiant's untruthfulness. To challenge an officer's truthfulness in an affidavit for a warrant to search Atchley's home for evidence of a marijuana grow operation, Atchley offered "numerous photographs" allegedly demonstrating that the officer did not see what he had claimed to see, and declarations supporting Atchley's contention that the officer could not have seen into his backyard because the gate was never left open. 142 Wn. App. at 158. Mr. Atchley argued that the officer's admission that he phrased statements in the warrant affidavit artfully was evidence the officer knew he was conveying a false impression to the magistrate. *Id.* at 159. This court affirmed the trial court's refusal to order a *Franks* hearing because the photographs did not directly conflict with the warrant affidavit, the declarations did not decisively foreclose the possibility the gate was left open, and the officer's statement was too ambiguous to be construed as an admission of perjury.

Mr. Eguires's evidence is less persuasive than that in *Atchley.* Mr. Eguires contends that Deputy McIlrath's telephonic affidavit was false in failing to reveal to the court that the specific location of the rifle was already known to the deputy before he

12

applied for the search warrant. He places substantial reliance on the CAD record, which includes communications that responding officers saw a rifle at the Eguires property pointing out of the window of a vehicle, and thereafter that two subjects then put the rifle down "on table or something." CP at 28. Yet there is no evidence that Deputy McIlrath was aware of all of the communications reflected in the CAD record. In fact, the evidence suggests that he *would not* have been aware of all of the communications.

The CAD record reflects communications by dispatch with six different officers. The communications are identified by officer number, and the CAD report reflects communications with officers numbered 973, 1203, 1215, 1220, 1225 and 1232. The record does not establish which communications were made by or heard by Deputy McIlrath. Statements in the CAD record reflect the speakers' knowledge that not all of the responding officers were hearing everything—directions are given to advise other officers of certain developments.[7] And Deputy McIlrath's police report and telephonic affidavit indicate there were times on the morning of the incident when he was interviewing a bus driver at the school and making a preliminary report. They, and the CAD report, also reveal that Yakama Nation officers arrived at the high school and the Eguires residence before the sheriff's deputies did.

---

[7] *E.g.*, "Contact 973 adv them 1225 maybe be with the veh[icle]"; "Contact 973 see if they want us to standby"; "Ok will let the dep[uties] know." CP at 26, 28 (some capitalization omitted).

In his telephonic affidavit, Deputy McIlrath told the district court judge, "Tribal police went to the house while I was giving the initial report. They located Dustin inside of the two-door Honda car. They saw him with what looked like a rifle, they did containment. Dustin walked to the—to his house." Transcript of Proceedings (TP) at 6. Only thereafter did the deputies arrive and take Mr. Eguires and the other man into custody. The CAD record does not establish that Deputy McIlrath knew all that other officers had seen when he completed the telephonic affidavit.

Mr. Mason also relies on Deputy McIlrath's narrative report of the incident, which states in part:

> I read Dustin his Miranda rights. He at first told me that he did not have a rifle. I obtained a search warrant for Dustin's house and property. While filling out the search warrant Dustin told me that the gun was on the table.

CP at 18. The deputy's report goes on to state that he initially searched for the rifle inside the residence but could not locate it; he later located it outside. Nothing in the deputy's statement indicates he was told by Mr. Eguires that the gun was on a table *outside*, as opposed to inside. From the conduct of the search he describes, it is apparent that he assumed it was on a table inside.

Also before the trial court was a narrative report of the incident prepared by Sergeant Splawn. It too, gives no indication that the deputies knew where the rifle was located before Deputy McIlrath applied for the search warrant. The sergeant's report

14

states in pertinent part that after Deputy McIlrath obtained a search warrant for the property, "We *discovered* the rifle on a table near the van." CP at 75 (emphasis added).

Mr. Mason argued that Deputy McIlrath's narrative report was inconsistent with the deputy's statement in his telephonic affidavit that Mr. Eguires told him "he did have a rifle, he set it somewhere on this—on his property, did not tell me where." TP at 6. The statement that the deputy was told the gun was on the table, with no identification of where "the table" was, and the statement that he was told the gun was somewhere on the property, but not where, are not inconsistent. They can be construed as a more specific versus more general way of conveying the same material fact to the judge: that the deputy was told the gun was on the premises, but not *where* on the premises. That the same words were not used both times does not demonstrate deliberate or reckless disregard of the truth.

With the addition to the record of the transcript of the telephonic affidavit, Mr. Eguires still does not demonstrate a reasonable probability that a motion for a *Franks* hearing would have been granted.[8]

---

[8] Mr. Eguires contends on appeal that there was evidence Mr. Heilman-Schott failed to discuss with Mr. Eguires the likelihood that evidence of the identity theft counts could be suppressed. Br. of Appellant at 16 (citing CP at 30, 33; RP at 52). The record contains argument to that effect, but not evidence. Mr. Eguires argues that because Mr. Mason represented Mr. Eguires told him as much, it "would have likely been rather simple to obtain and present a sworn declaration, or put Eguires on the stand to testify to that effect." *Id.* Absent evidence of what Mr. Eguires would say, that is speculation.

Interestingly, Mr. Mason never represented to the trial court that Mr. Eguires

No. 34651-0-III
*State v. Eguires*

Even if Mr. Eguires demonstrated a reasonable probability of success, but *merely* a reasonable probability of success, he might still fail to make the second required showing of deficient performance. Mr. Heilman-Schott might reasonably have concluded that advancing a *Franks* motion that was not *guaranteed* to succeed was not worth the risk that an attractive plea agreement offered by the State would be withdrawn. Because we need not consider both of the showings required where a defendant fails to show one, we need not analyze deficient performance further. *In re Pers. Restraint of Crace*, 174 Wn.2d 835, 847, 280 P.3d 1102 (2012) (citing *Strickland*, 466 U.S. at 697).

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Siddoway, J.

WE CONCUR:

Lawrence-Berrey, C.J.

Fearing, J.

claimed he told Deputy McIlrath the gun was on a table outside, in a place where deputies could have seized it without a warrant. Mr. Eguires would have firsthand knowledge of those facts, if true. The trial court would be entitled to view the absence of that evidence from Mr. Eguires as undercutting his motion for a *Franks* hearing.

16